Bessie Green et al., Appellees, v. Locomotive Engineers' Mutual Life & Accident Insurance Association, Appellant.

**INSURANCE:** Accident Insurance—Proximate Cause. Evidence reviewed, and held wholly insufficient to show that an alleged injury was the cause of the death of insured.

*Appeal from Marshall District Court.*—James W. Willett, Judge.

December 15, 1922.

Action in equity, upon an accident policy providing for the payment of $2,000 in case of death by accident. The facts are stated in the opinion. There was a judgment and decree for plaintiffs, as prayed, and defendant appeals.—*Reversed.*

*C. H. E. Boardman,* for appellant.

*E. N. Farber,* for appellees.

Stevens, C. J.—Plaintiffs are the daughters of Orson O.

Green, who died December 1, 1916. At the time of his death, he held a policy in the appellant company, providing for the payment of a weekly indemnity of $20 and of a principal sum of $2,000 in case of death from accident. The appellees are the beneficiaries named in said policy. A motion was made by appellant during the trial, and after appellees had filed an amendment to their petition, to transfer the cause to the law side of the docket. This motion was overruled, and this ruling is assigned as error; but, in view of the conclusion reached upon the merits, we shall not consider this assignment.

The evidence shows that Green resided at Marshalltown, Iowa, and was a locomotive engineer in the employ of the Minneapolis & St. Louis Railway Company; that, on the first day of August, 1916, while he was attempting to pass from the deck of the engine to his seat in the cab, his foot slipped, and he struck his side against the seat. This accident, it is claimed by appellees, caused a cancer of the left kidney, of which he died on the first day of December following. The fireman was the only witness who saw or testified to the accident. He testified that deceased stepped upon a tool box with his left foot, which slipped and caused him to swing around in such a manner as to strike his left hip or side against the edge of his seat in the cab. According to the testimony of the fireman, Green's body fell about eight inches before striking the seat. The testimony of this witness, that deceased struck his left side against the seat, is contradictory of the statement made by him to officers of appellant. The witness admitted that he stated to them that deceased struck his right side, and gave as his reason for such statement that their treatment of him was ungentlemanly. The fireman further testified that Green said at the time that he was not hurt much, and that, contrary to his custom, he stood up most of the time until they arrived at Marshalltown. The only trip made by Green after the accident was on August 3d.

Some time early in August, he consulted a physician, who testified that he found no external evidence of injury, but who further testified that Green told him he had had an accident. It was not very long after he consulted the physician until his difficulty was diagnosed as cancer of the kidney. After the physician first consulted reached the conclusion that Green

could not recover, another physician was appealed to, in vain, and the patient soon returned to the physician first consulted. Green declined rapidly from the time of the accident until his death. A post-mortem examination revealed the cancer, and it is conceded that it was the cause of his death. So the question we are called upon to decide is whether the accident caused the cancer. The two physicians whom he had consulted testified that a cancer of the kidney might have resulted from a blow. They admitted, however, that this was largely a matter of conjecture. It appears that little is known definitely as to the cause of cancer, although the witness testified that it frequently follows an injury, and that such is now recognized by medical science as the most prominent cause thereof. The testimony of the medical experts who testified in this case is far from conclusive, if, indeed, it is persuasive. A lay witness called by appellant testified that he had been absent from Marshalltown for some time, but returned in March, 1916; that he was well acquainted with Green, and immediately noticed that he was greatly reduced in flesh; that Green pulled his waistcoat about him, to indicate the extent of his decline. Other witnesses testified that he frequently complained of not feeling well. Before his decline, Green weighed over 200 pounds. Other witnesses testified that he was in apparent good health, and gave no sign of loss in weight until after the accident. Various witnesses who are employees of the railway company, who lived near Green and saw him often during his illness, testified that he never mentioned the accident to them. Officers of the appellant company called upon him, and they testified that he said nothing to them about an accident.

The policy in suit provided for the payment of a weekly indemnity of $20 per week. Notwithstanding the fact that Green lived from August 1st until December 1st following, no claim or application was made to appellant for the payment of this indemnity. The policy was not forgotten during that period, because one of appellees testified that she paid a premium thereon during the time of her father's illness. While, of course, the inference is by no means conclusive, the fact that Green made no claim for indemnity during the four months he lived after the accident is, nevertheless, a circumstance of grave

importance in passing upon the facts. Surely he did not trace his condition to the accident. The reason for this may be found in the probable fact that he had pain in the region of his kidney before the accident occurred. The very purpose of carrying an indemnity policy was to provide benefits in case of disability resulting from accident. Green suffered much pain in his left side during the period of his illness, and would frequently rub his back with his hand. Medicine was administered to him internally. The proof relied upon by appellees to sustain their claim that the cancer was the result of the accident is of the most unsatisfactory character.

Green had been a locomotive engineer for many years. One of the medical witnesses testified:

"Cancer may be caused from pressure produced by the vocation that a man follows: as a man that is a locomotive engineer, riding on a train. A man sitting in a cramped position for hours can cause an irritation by years of following that business. That, by irritation, may cause cancer of the kidneys; but that is all in the realm of guesswork—just the same as my answer as to what might have been the cause of the trouble."

On cross-examination, he testified that:

"All I am undertaking to say in this case is that possibly, if Oscar Green had received a blow, that it might have caused this malignant growth. I would not want to go any further. That is, if Oscar Green received a blow at that time, it might possibly have caused the condition I found there. There was nothing to indicate he had ever received any injury. Many persons in good health have received a terrific injury over the kidney without causing a cancer. We don't have very many cases of cancer following a very severe blow. The severe blow causes death quicker than the cancer. In order to cause a cancer, there must be force manifest, and it has to reach the kidney itself. A person that would simply fall, and struck the edge of a cushioned box on the side over the hip,—I would not expect that to cause a cancer."

The physician who first examined him testified that, about six weeks after the accident, he located a tumor extending around to the spinal column, and that it gradually grew larger,

until, at the time of his death, it extended over across the abdomen almost to the hip and up under the ribs.

No expert testimony was offered by appellant; but it seems to us that the evidence offered by appellees is so indefinite, uncertain, and speculative in its character that the court cannot say that it preponderates in favor of appellees' theory. The medical experts expressed the opinion, in answer to a hypothetical question, and also gave it as their judgment, that a cancer might be produced by a blow or injury; but they were about equally as emphatic in their statements that it might result from the position assumed by a locomotive engineer while sitting on the seat in the cab. The probabilities in favor of appellees do not outweigh the opposite probabilities, and, as stated, the testimony is not at all convincing. The case is triable *de novo*, and our review of the evidence is not for the purpose of determining whether it was sufficient to justify the submission of the case to a jury, but for the purpose of determining the merits of the controversy.

Whether the evidence was sufficient to have carried the case to the jury, we need not discuss. It is our conclusion that there is such a failure of proof to sustain the allegations of the petition that we are driven to a conclusion opposite to that reached by the trial court. Other questions argued by counsel need not be discussed. The judgment of the court below is—
*Reversed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.