MRS. ELLA SLACK, Administratrix, Appellant, v. C. L. PERCIVAL COMPANY et al., Appellees.

**APPEAL AND ERROR:** Right to Maintain Appeal. Questions which
1  arise subsequent to the rendition of a decision appealed from, and
   which go to the right to maintain the appeal, will not be considered
   on appeal when raised only in appellee's brief, unaided by any
   motion to dismiss the appeal.

**MASTER AND SERVANT:** Workmen's Compensation Act—Accelera-
2  tion of Fatal Disease. Compensation is not due under the Work-
   men's Compensation Act, under a showing, *based on mere conjecture,*
   that an injury arising out of and in the course of an employment
   accelerated the termination of an already existing fatal disease in
   the employee.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

JUNE 24, 1924.

THIS is an action brought under the Workmen's Compensation Act. The industrial commissioner awarded compensation. On appeal, this action was reversed by the district court. The claimant prosecutes an appeal to this court.—*Affirmed.*

*B. O. Montgomery,* for appellant.

*Miller, Kelly, Shuttleworth & McManus* and *H. W. Raymond,* for appellees.

FAVILLE, J.—I. The original claimant was the widow of the deceased employee, Joslin. Her administratrix has been substituted as claimant in this action.

The hearing on review before the industrial commissioner was had on April 28, 1922, and the decision of the industrial commissioner was rendered May 4, 1922. An appeal was taken to the district court, and the cause was heard in the district court on the 24th of August, 1922. The original claimant died November 1, 1922. The decree of the district court reversing the decision of the in-

1. APPEAL AND ERROR: right to maintain appeal.

dustrial commissioner was not entered until September 14, 1923. The administratrix of the estate of the claimant was appointed January 22, 1924, and on said day was authorized to appeal said cause to this court; and on January 28, 1924, an order was entered in said court substituting the administratrix of the estate of the claimant as a party plaintiff.

It is argued by appellee that the right of the surviving spouse to compensation is not a vested right, and did not pass to the administratrix. This question is presented to us only in the brief of appellee.

The cause was submitted to the trial court on August 24, 1922, and was not decided until some thirteen months later. There is a statement in the abstract that the original claimant died in November, 1922. This was some ten months before the decree was entered in the district court. The administratrix, however, was not appointed until January 22, 1924, and the order substituting the administratrix as plaintiff was entered on January 28, 1924, and the appeal was taken thereafter. Nothing further has been done in the matter.

In this state of the record, we cannot consider the question presented by appellee solely in the brief filed in this court. We therefore make no pronouncement on this question. Under Code Section 4151, and Rule 41 of this court, where appellant has no right, or no further right, to prosecute the appeal, appellee may move to dismiss it. No such motion has been made. We must consider the case upon the record presented in the court below. As bearing on the question, see, however, *Sider v. General Elec. Co.*, 238 N. Y. 64 (143 N. E. 792); *Smith v. City of Bluffton*, (Ind. App.) 141 N. E. 532.

II. The workman was a man about forty-five years of age, and was employed as a painter and paper hanger, and also did work as a common laborer. He was a man weighing about 170 to 185 pounds. On January 21, 1921, while in the employ of appellee Percival Company, he fell a distance of twelve or fifteen feet into an elevator pit, and landed on the cement floor. He received a fracture of the femur and also of the ulna. Both fractures were treated at a hospital for about two months, and the workman recovered sufficiently therefrom to leave the hos-

2. MASTER AND SERVANT: Workmen's Compensation Act: acceleration of fatal disease.

pital, and was removed to his home, but did not engage in work again. About the middle of July, 1921, he consulted a physician in regard to stomach trouble. A consultation of physicians resulted in a diagnosis of cancer of the stomach. He died August 5, 1921, and a post-mortem examination disclosed that he was suffering with a carcinoma, sometimes called "leather bottle cancer." The post-mortem also disclosed old scars of an attack of peritonitis, and some tying together of the intestines.

The question for determination upon this appeal is whether the record shows that the death of the deceased employee resulted from an injury arising out of and in the course of his employment. The undisputed evidence shows that the death resulted solely from the cancer; and the ultimate question involved in the case is whether, under the disclosed facts, this cancer was either caused by the injury or was so accelerated thereby that it hastened the death of the employee.

It is contended that there is no substantial conflict in the evidence upon the question of the cause of the death of the employee, and that the finding of the industrial commissioner is contrary to the evidence on the question as to whether or not the injury either caused or contributed to the death of the employee.

The evidence bearing on this question is, of necessity, furnished by medical experts. It is well known that the disease of cancer has baffled the best efforts of the medical profession, to a large extent. The latest modern science has been unable to definitely and accurately ascertain the cause of this dread disease; and it appears that medical science has discovered no known method of staying its ravages, except by a surgical operation, or by the use of radium or X-ray. There is no method of checking the progress of the disease by the use of medicine; and cancer of the character of the one with which the employee in this case was affected is progressive in its development, and invariably and inevitably results fatally.

There is evidence in the case tending to show that it is believed in medical circles that cancer may in some instances result from a traumatic injury, such as a blow; but this is not at all a matter of certainty, but rather of conjecture and surmise on the part of men of medical science.

If it should be conceded that there is opinion evidence in

the case to the effect that a cancer of the character of the one in question might have resulted from a traumatic injury, still the evidence in this case fails to show that the employee received any such an injury in the location of the cancer as might have caused its development. Under the record, it must be held that there is no evidence to warrant a conclusion that the injury to the workman was the cause of the cancer which resulted in his death.

Furthermore, it is quite satisfactorily established from the record that the cancer which caused the death of the employee in August, 1921, must have been in existence, and in an incipient state at least, for some time before the date of the injury to the employee. So that the question of fact narrows itself somewhat to the proposition as to whether or not the injury to the employee accelerated or whipped up the growth and development of the pre-existing cancer, so that it can be said that it hastened the death of the employee.

We are cited to a number of cases where, under statutes similar to ours, it has been held that, where the injury accelerated a pre-existing disease with which a workman has been afflicted, and thereby hastens his death, it furnishes a case for compensation under the statute. Such may be conceded to be the rule recognized by persuasive authority. Authorities recognizing such rule as applied to other diseases than cancer, which are not necessarily fatal, are of little value, however, in determining the question before us. We are confronted with the question of fact as to whether or not, assuming that the workman was afflicted with carcinoma at the time of his fall down the elevator shaft, with the resultant injuries that followed therefrom, it can be said that such injury accelerated the development and growth of the cancer with which the workman was afflicted, and thereby hastened his death from such malady.

The fall of the workman resulted in severe physical injury, in the breaking of bones, in severe shock and prostration, and a necessary loss of physical vitality. It might well have rendered him more susceptible to the inroads of communicable diseases than he otherwise would have been. Undoubtedly, immediately following the injury his powers of resistance were lessened. But the question is whether or not the injury and the general phys-

ical condition resulting therefrom accelerated the ravages of the existing carcinoma toward its inevitable end.

One of the medical experts testified that, in so far as the injury would lower a person's vitality, it would hasten the development of the cancer. Another expert testified:

"Q. From the history given you and the observation you made of the case while treating him, is it your opinion that death was hastened by this accident? A. Materially hastened."

Another expert said:

"My personal opinion is that it was hastened—the least I could say—that it was hastened in growth by the injury."

Another doctor testified as follows:

"Q. Assume that this man did have this severe fall and shock, and that he had cancer prior to that time, is it not a fact that the shock would lessen his power of resistance and increase the rapidity with which the cancer would grow? A. Oh, it might, possibly; but that is pure speculation. I don't know of any direct authority for such a thing as that. In my judgment, that would be pure speculation."

He also said:

"Q. It is a fact that the shock would reduce his power of resistance? A. Yes, sir. Q. And hasten the development of cancer, if present? A. It might possibly, and yet that would be speculation. I know of no authority back of it to make that assertion."

Another witness testified:

"Q. Doctor, if this man sustained a severe accident, to the extent of breaking his arm and breaking his leg, bruising his back and shoulder and his hip, by falling a distance of fifteen feet and lighting on a cement floor and disturbing his intestines and causing adhesions and scarring his spleen, is it not a fact that that shock, if the cancer were present, would increase or aggravate the condition and cause it to grow more rapidly? A. I think that is purely speculative, too. I do not think you have got any statistics where you can prove that, one way or the other. Q. You are not prepared to answer it either way? A. I could not answer it either way, in my judgment. That is purely problematical."

He also testified:

"Q. Assume in this case that a man had fallen about twelve or fifteen feet, fracturing the right femur and elbow; upon a physical examination thereafter, it disclosed no evidence of a blow to the abdominal region; later, about seven months later, he was shown to have carcinoma of the stomach; and about eight months later, he died as the result of such carcinoma,—would you say that such fall had any connection with the origin of the carcinoma? A. I would not think so. Q. Would you say that that fall had anything to do with increasing the rapidity with which this carcinoma developed? A. That, of course, is problematical. * * * You have to keep this in mind: that is, we know so little about what causes the acceleration or growth or diminution of growth of cancer; in fact, there is not anybody that knows anything about it definitely. It is purely speculative."

The medical experts seem to agree that a cancer of this character is absolutely fatal. One of the witnesses expressed it in this manner:

"In cancer you are dealing with something that is invariably fatal anyway. You are dealing with something where there is no body resistance. I say that with knowledge of the recent literature on the effect of the attempts of the body to resist; but there is no rule, because the body does not resist cancer. The patient dies. * * * This is a rather peculiar thing: that the younger a person is, as a general thing, the wickeder the cancer is,—that is, the faster it grows. As a general thing, cancers in young,—carcinoma when we do find it in the young,—it is a very malignant thing. In the older persons, when they get around 70 or 80, the carcinoma can be of very slow growth; because cancer, be it carcinoma or sarcoma, is made up of tissue cells that need nutrition, and if the tissues are in a robust man, those cells will grow faster, and if they are old, those cells are apt to grow slow, as a general rule."

In actions of this character, it is the universal rule that the claimant has the burden to establish by a preponderance of the evidence a right to compensation. In other words, the matter cannot be left wholly to surmise or conjecture. A legal right is involved. It must be established in a legal way, and not by guess or speculation. *Flint v. City of Eldon,* 191 Iowa 845;

*Sparks v. Consolidated Indiana Coal Co.,* 195 Iowa 334; *Kraft v. West Hotel Co.,* 193 Iowa 1288.

If there is sufficient evidence to sustain a finding that the death of the workman resulted from or was accelerated by the injury which he received, then compensation is allowable; otherwise not. Under the record in this case, it must be held that the workman died as the result of a cancer. This was a fatal disease. All the medical experts agree that this malady would have killed the workman in any event. The utmost that can be claimed for the evidence of the claimant is that, in the opinion of the medical experts offered by claimant, the injury to the workman, by lowering his powers of resistance, *may* have somewhat increased the rapidity of the progress of the fatal disease then upon him. Is this sufficient to make a case for an award of compensation? It was incumbent upon the claimant to establish a proximate causal connection between the injury received and the death. *Flint v. City of Eldon,* supra.

It would have been permissible to prove that the injuries sustained were of such nature that they would, according to medical science, be likely to cause an aggravation or acceleration of the existing cancer. Such a showing would permit an affirmative inference; but this would require a showing that the alleged injuries were of such nature as would probably at least aggravate the workman's disease and proximately accelerate his death. In other words, it was necessary for the evidence to show, and the commissioner to find therefrom, that the death of the decedent would not have occurred on August 5th, but for the injury received on January 21st. It was incumbent upon the claimant to produce sufficient evidence to sustain such a finding. *Pentony v. Dudley,* 197 Iowa 744, and cases cited therein.

The utmost that can be claimed for the evidence in behalf of the claimant in this action, upon the question of the injury's being the proximate cause of the alleged acceleration of the cancer, is the opinion of the medical experts produced by the claimant, that the lowering of the vitality of the workman because of the accident *might* have hastened his death. If this evidence be given full credence, it merely presents a case of speculation or conjecture as to whether or not the accident hastened

the workman's death.  See *Green v. Locomotive Eng. Mut. Life & Acc. Ins. Assn.*, 194 Iowa 1203.

It must not be forgotten that all of the experts agreed that the workman would inevitably have died from the effects of the cancer, regardless of any injury that befell him.  According to the opinion of some of the experts, the injury *might* have caused him to die sooner than he otherwise would have died from the cancer.  This is, however, only conjecture and speculation, based solely on the fact that the injury reduced the vitality of the workman, and that, under such circumstances, the disease with which he was already afflicted *might* have progressed more rapidly than it otherwise would.

We think that this testimony of necessity left the claimant's case wholly in the realm of conjecture, speculation, and surmise.  No one can tell that an injury of the character received by this workman hastened the ravages of the disease with which he was then afflicted, so that his death six and a half months after the injury was accelerated or hastened by the injury.  The evidence shows that the rapidity with which cancer results in death varies greatly.  Its progress may be more rapid in one victim than in another.  No one can tell with any degree of certainty the number of months a person known to be afflicted with such a cancer may live.  It is the merest speculation and conjecture to attempt to say that the workman who lived six and a half months after the injury, and who died of cancer, would have lived a day longer, had it not been for the injury which he received.  How much longer might he have lived, had it not been for the injury?  Who can even venture a guess?  He was doomed in any event.

Remembering that the burden rested upon the claimant to establish the fact that death resulted from the injury, and that it was incumbent also upon the claimant to establish a proximate, causal relationship between the injury and the death, we think that the record in this case failed to present any evidence upon which the conclusion of the industrial commissioner, authorizing an award, could be predicated.  Had the action been an ordinary action at law, to recover for damages, it would have been the duty of a trial court to direct a verdict against the claimant.

Under such circumstances, we must hold that, as a matter of law, the claimant failed to carry the burden of establishing that the death of the workman resulted proximately from the injury complained of, or that there was sufficient proof that the latter accelerated the death of the employee.

It follows that the order of the district court in reversing the finding of the industrial commissioner was correct, and it is, therefore,—*Affirmed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.