VIOLA GUTHRIE et al., Appellees, v. IOWA GAS & ELECTRIC COM-
PANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Jurisdic-
1  tion of Court—Undisputed Facts.  The court has power, under the
Workmen's Compensation Act, to determine whether the record con-
tains sufficient competent evidence to show a causal connection be-
tween the injury received and a subsequently discovered condition
of the injured person.

**MASTER AND SERVANT:** Workmen's Compensation Act—Right to
2  Compensation—Degree of Proof As to Causal Connection.  Compen-
sation may not be awarded under the Workmen's Compensation
Act when the sum total of the competent evidence shows that the
injury complained of *might or might not* have been the cause of a
subsequently discovered condition.  So held where an injury to the
knee was claimed to have resulted in a tubercular condition of the
knee.

**Headnote 1:**  Workmen's Compensation Acts, C. J. p. 123  (Anno.)
**Headnote 2:**  Workmen's Compensation Acts, C. J. p. 116.

*Appeal from Washington District Court.*—CHARLES A. DEWEY,
Judge.

JUNE 25, 1925.

THIS case involves an application for an award under the
Workmen's Compensation Act.   The industrial commissioner
allowed an award, which, on appeal to the district court, was
affirmed.—*Reversed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Livingston & Eicher,* for appellees.

FAVILLE, C. J.—The workman, Robert Guthrie, was em-
ployed as a tender to a brick mason who was engaged in the
construction of a chimney, at the time of the injury complained
of.  In March, 1917, while so employed, Guthrie was struck on
the left knee by a hod of brick.  It appears that the rope with

which the hod of brick was being hoisted was jerked by an em-
ployee, and that this caused the hod of brick to bound back
and strike Guthrie on the left knee. There was some pain at
the immediate time of this injury; but, after a short rest,
Guthrie resumed his duties, and continued with his work, and
remained at such employment regularly for a period of ap-
proximately two months, when the employment terminated.

On February 27, 1923, Guthrie filed his application for
arbitration, setting up the injury to his knee in March, 1917,
and alleging that:

"As the direct result of the injury aforesaid, tuberculosis
set in, by reason of which injured has been totally and per-
manently disabled since August, 1919."

The arbitration hearing was held in September, 1923; and
sometime since said date, Guthrie died of tuberculosis, and his
administratrix has since been appointed and substituted as
claimant in this cause. No claim is made for the death of
Guthrie, nor is it contended that his death resulted from the
injury complained of. The claim is for injury to the knee, pro-
ducing a loss of the use of the leg.

The workman was attended by a physician sometime during
the year 1919, and on March 31, 1920, was examined by the pro-
fessor of orthopædic surgery at the university hospital at Iowa
City; and on May 3, 1920, an operation was performed, which
consisted of a resection of the knee joint, the necessity of which
was caused by an infection of tuberculosis. In July, 1922, the
limb was amputated.

The important question in the case is whether or not it can
fairly be held, under the record, that there was proof of a causal
connection between the injury to the knee by the blow from the
hod of brick, and the tubercular infection of the knee joint.

There is practically no dispute whatever in the evidence in
the case. We have repeatedly held that, where the evidence in
a case of this kind is in conflict, the finding of the industrial
commissioner upon disputed facts is binding
upon us. But where the facts are not in dis-
pute, it is within the province of this court to
review the conclusion of the commissioner, based
upon such undisputed facts, and to determine

1. MASTER AND
SERVANT: Work-
men's Compen-
sation Act:
jurisdiction of
court: undis-
puted facts.

whether or not there is "sufficient competent. evidence in the record to warrant the making of the order or decision." Code of 1924, Section 1453.

We therefore turn to the facts in this case. These show, without dispute, that Guthrie received a blow on the left knee, from a swinging hod of brick, sometime in March, 1917. The injury was painful at the time, and from and after this date Guthrie intermittently suffered some pain. He continued his work for the company with which he was employed, until the job on which he was then engaged was completed.

2. MASTER AND SERVANT: Workmen's Compensation Act: right to compensation: degree of proof as to causal connection.

Thereafter, he went to work for a coal company, hauling coal, and worked for said company for some time, the exact dates not appearing in the record. In the spring of 1919, he was attended by a physician, who testified that he found Guthrie "suffering quite a little pain in one knee and some general little pains over the body, but mostly referred to this one knee joint." The doctor so employed gave Guthrie treatment; and he steadily grew worse, and finally became entirely bedridden. The doctor testified that he diagnosed the disease as synovitis, and that he probably also had arthritis. In March, 1920, Guthrie was taken to Iowa City to the hospital; and on April 3d of that year, an operation was performed upon the knee, which disclosed that it was infected with tuberculosis; and about two years later, the leg was amputated. Guthrie died of tuberculosis of the lungs, sometime after September, 1923, the exact date not appearing in the record.

The physician who treated Guthrie testified, in answer to a hypothetical question respecting the condition in which he found Guthrie in March, 1919, as to the cause of such condition, that he thought it was a result of the blow. He testified that he could not tell what caused the condition, except by what had been told him; that he could not tell whether it resulted from the blow or from something else. He said it might have been caused from the blow, or it might have been from a sprain.

The claimant's case rests chiefly upon the testimony of Dr. Steindler, of the orthopædic hospital at Iowa City, who testified, in answer to a hypothetical question, that he "should think that the injury could be considered as a contributing factor to the

development of the tuberculosis of the knee." He further testified:

"Q. You couldn't say the injury, if there was one in March, 1917, contributed to his condition as a fact?' A. I couldn't say positively that it did contribute; I only could say it might contribute, and did say it might be a contributing factor. Q. At the same time, it might not? A. Yes, sir. Q. In other words, might be either one? A. Yes, sir."

He further said:

"Q. You don't know how long this man had tubercular bacilli in his system? A. No. Q. Any statement you make how long it had been there would be guesswork, wouldn't it, doctor? A. Yes, sir."

He also testified:

"Q. Do you frequently have cases where tuberculosis is manifested in a joint, following an injury? A. We have. Q. Did you have sufficient observation of this particular case to form an opinion whether or not this particular tubercular joint resulted from a trauma,—injury? A. None but the statement of the patient. Q. Considering the statement, or taking into account his statement or history which he gave you, with that history and with your knowledge of the case obtained from actual contact with the case, did you form an opinion as to whether or not the injury was in any wise responsible for the tubercular joint? A. Assuming the statement was correct as the patient gave it to us, we were inclined to think the trauma had something to do with bringing about the manifestation out in the open. Q. Assuming that the injury was sustained in March, 1917, would that be consistent with the condition of the knee found at the time of the operation, assuming that the injury was responsible for the condition? A. Yes, sir, it could be. * * * Q. At the time he was discharged to Oakdale, he had tubercular condition existing where? A. Lungs. Q. Does that necessarily result from this other? A. No; it is more likely that this other resulted from tuberculosis of the lungs. * * * Q. He had tuberculosis of the lungs in the first place? A. Yes, sir: we don't consider tuberculosis of the joint primary tuberculosis; we consider that secondary tuberculosis. Q. You consider he had tuberculosis of the lungs before? A. Yes, sir.

* * * Q. Might this knee condition that you found at the time of the operation have been present in the patient without any injury or accident whatever? A. Yes, sir. Q. Could you tell from the condition you found whether there had been an injury, or what kind of an injury there had been? A. No.''

Also, he testified:

''Q. From this condition you found, you couldn't tell whether or not there had been tuberculosis three years or not, could you? A. No. Q. You couldn't tell what kind it had been, if he did not have it then? A. No. Q. He might have contracted tuberculosis since that time? A. Yes, sir, since 1917. Q. And after the injury? A. Yes, sir. Q. And still might have affected the knee and caused the same result? A. Yes, sir.''

To summarize the record in the case, we have a situation where a workman receives an injury by a blow on the knee, which causes some pain at the time, but not sufficient to interfere with the workman's proceeding immediately thereafter with his regular employment, and continuing in the same without interruption until the conclusion of the service for which he was employed, some two months later. Thereafter, he acquires other employment at manual labor, and continues in it for some period of time. He has intermittent pains about the knee, and consults a physician about two years after the injury. Approximately a year thereafter, a resection of the knee is made, because of its infection with tuberculosis, and subsequently an amputation of the limb is necessary. No claim for compensation was instituted until some six years after the injury occurred to the knee, and the workman subsequently died of tuberculosis of the lungs. The claim is for total and permanent disability from and after August, 1919, a year and five months following the injury.

Upon this record, we think it cannot be held that there is ''sufficient competent evidence in the record to warrant the making of the order of decision'' of award. According to the testimony of the expert medical witnesses chiefly relied upon, the condition of tuberculosis of the claimant's knee might or might not have been caused or contributed to by the injury complained of. According to the doctor, the tuberculosis of the knee he regarded as ''secondary tuberculosis,'' and the tuber-

culosis of the lungs as "primary tuberculosis." There is, however, no evidence whatever that the claimant had tuberculosis of the lungs prior to the injury. In fact, the doctor testified that the claimant might have contracted tuberculosis after the injury, and, if so, that it might still have affected the knee and caused the same result.

In response to an inquiry by one of the board of arbitration, the doctor testified that the knee condition he found at the time of the operation might have been present in the patient without any injury or accident whatever, and that he could not tell from the condition he found whether there had been an injury, or what kind of an injury there had been.

In other words, to sum the whole matter up, the testimony of the experts is to the effect that the blow from the hod upon the knee, in 1917, *might* have injured the knee so that it *might* have become a seat for tubercular infection which developed and showed itself in 1919; but that the tubercular condition of the knee might have also resulted without any blow whatever; and that the same condition that existed in the patient might have been brought about without the occurrence of any injury.

We therefore have a situation where it appears that the injury complained of did not result in any immediate serious inconvenience to the workman. He suffered some pain at the time, but not sufficient to interfere with his continuing his employment immediately thereafter, and for two months following. It was two years after the injury before any condition developed in the knee requiring the services of a physician, and a year later before a diagnosis of tubercular infection of the knee was made. Can it be said that there is sufficient "competent evidence" to show a causal connection between the injury to the knee and the tubercular condition that was ultimately discovered therein? The leading medical expert answered the proposition in the following manner:

"Q.  Might this knee condition that you found at the time of the operation have been present in the patient without any injury or accident whatever?  A.  Yes, sir."  Furthermore, "Q.  He might have contracted tuberculosis since that time?  A.  Yes, sir, since 1919.  Q.  After the injury?  A.  Yes, sir.

Q. And still might have affected the knee and caused the same result? A. Yes, sir."

The testimony of the medical experts is merely to the effect that the injury to the knee might or might not have contributed to the tubercular condition that subsequently existed. There is no evidence tending to prove that the injury was of such a nature that, according to medical science, it would have been likely to or would probably have resulted in the condition described. As the physician puts it, it might have contributed to the injury, and it might not have done so.

The rule in this state in cases of this character is well established. In *Flint v. City of Eldon*, 191 Iowa 845, we said:

"The burden of proof rests upon the plaintiff in a compensation action to establish his case by a preponderance of the evidence. This is a basic principle of our common law, and adopted by every compensation tribunal and every court in the land. It is also incumbent upon the plaintiff to establish by the same rule the proximate causal connection between the injury received and the death. Compensation, therefore, cannot be awarded upon a state of facts which is equally as consistent with no right to compensation as it is with such right."

In *Sparks v. Consolidated Ind. Coal Co.*, 195 Iowa 334, we said:

"The finding of the commissioner must be based on evidence that may be either direct or circumstantial, and on the reasonable inferences that may be drawn therefrom. It cannot, however, be predicated upon conjecture, speculation, or mere surmise."

In the opinion in said case we cited a number of authorities to like effect. See, also, *Slack v. Percival Co.*, 198 Iowa 54; *Pentony v. Dudley*, 197 Iowa 744; *Green v. Locomotive E. M. L. & A. Ins. Assn.*, 194 Iowa 1203. The rule announced in these cases is controlling in the instant case.

In this case it would have been proper to show, if such be the fact, that, according to medical science, an injury of the kind and character that was inflicted upon claimant's knee in March, 1917, would probably result in the tubercular condition that was found therein in 1920. In other words, there must be some competent evidence of a causal connection between the in-

jury and the condition complained of, to justify the award. The matter cannot be left wholly in the realm of speculation, conjecture, and surmise.

The most that can fairly be claimed for the evidence in this case is that, in the opinion of a medical expert, the injury *might* have contributed to the condition of the knee, and it might not. The testimony is to the effect that, if the claimant had tuberculosis at the time, the injury to the knee *might* have contributed to the fact, and that spot might have become a location for tubercular infection thereafter. But there is no evidence that the claimant had tuberculosis in his system at that time, or even if he did, that the injury did, or even probably would, have caused the resulting condition found two years later.

Liability for an injury cannot be predicated upon such indefinite speculation and conjecture as is disclosed by the record in this case, which is the sole basis for recovery.

We reach the conclusion that the finding of the industrial commissioner is not sustained by "sufficient competent evidence," and that the trial court erred in so holding.

In view of our conclusion on this branch of the case, other questions presented do not require our determination, and are, therefore, reserved from this decision.

The judgment appealed from is reversed, and the case remanded.—*Reversed and remanded.*

EVANS, ARTHUR, and ALBERT, JJ., concur.