JOHN NASH, Appellant, v. CITIZENS COAL COMPANY et al., Appellees.

No. 44195.

FEBRUARY 15, 1938.

Harry F. Garrett, for appellant.

Huebner & Huebner, for appellees.

HAMILTON, J.—Claimant is a colored coal miner, employed by the Citizens Coal Company of Appanoose County, Iowa, in mining and loading coal in the mine. On or about the 8th of February, 1936, the claimant noticed his left leg was swelling below the knee along the shin bone. He testified that about noon he came out of the mine because he was sick and felt bad all over, with pain in his left leg and his chest. Sometime in the forenoon he noticed his leg swelling and showed it to the foreman, Mr. Anders, and said to him: "See how my leg is swelling," and Anders said: "J. L., what did you do to your leg," and Nash said: "I don't know." The top boss or weigh boss who was in charge of the office outside observed the claimant's condition, called a cab and sent him home. The swelling became worse and finally became painful, developing a septicaemic condition, and claimant was unable to work for several months and was still unable to work at the time of the trial of the case below.

In April, 1936, a Mr. Wilson, who was secretary of the Pioneer National Casualty Company, in which company the Citizens Coal Company had carried a policy of insurance covering its employees, and Mr. Anders, the foreman of the mine, called on Mr. Nash and obtained from him a signed statement which was read over to him, and which he himself read over before signing. In this statement, in answer to an inquiry as to how he thought he received his injury, the claimant said: "I think I bumped my leg in the mine about two days before I came out of the mine at noon on February 8, 1936. The reason I think I hurt my leg at that time is because the doctor said it would take about two days to develop the condition he found in my leg." Both Wilson and Anders were witnesses at the hearing and testified in support of the truth of the statements contained in this written statement.

On direct examination Nash was asked the following question:

"Q. At that time (the day he quit work and came up out of the mine) did you tell Mr. Thomas you had received an injury in the mine? A. No.

"Q. Did you explain to him you had bruised your knee? A. No."

The evidence clearly shows by the testimony of Nash, Wilson, and Anders that the claimant had no recollection of receiving any particular bump at any certain time or place. He testified that he received a bump but he couldn't tell whereabouts in the mine he received it, and neither did he have any definite recollection as to just how it occurred. He apparently paid no attention to the bump at the time he received it. He continued to work until noon of the second day after the day he now claims he received the bump. If he received the bump it was so slight that it caused no abrasion of the skin and no discoloration, and there is no evidence that it caused any soreness at the time at all. On the witness stand Nash said that he now remembered that he received a bump, but he was not able to tell anything definite concerning just when or how, or in what particular place he received it, except that he must have received it in the mine for he worked no other place. He testified that he frequently received bumps in working low ceiling coal on his knees.

The strongest the claimant's doctor was willing to testify concerning the cause of the swelling and the resultant disability of this leg was that the bump *might* or *might not* have caused the trouble. He would not go as far as to say on the witness stand that the bump could, or probably did, cause the trouble. He said he thought it was compatible with it. This question was asked the doctor: "Assuming that a condition exists such as you have described, will you tell the commissioner whether or not a bump or a bruise might cause such a condition? A. It may or may not.

"Q. In this case do you think it did? Is it your opinion that it did? A. Well, that would be very hard to say. I think it is compatible with it. I think such a thing could result from a bump. However, there are other causes which might produce it."

The doctor then explained his theory of how this little bump might cause a slight blood clot to form, and in some way infection would develop, causing the pus pocket formations which were later present in the claimant's injured leg; but on cross-examination his testimony indicates that it would be a rather extraordinary occurrence for such a thing to happen where there was no bruised condition or broken condition of the

skin tissue. Another physician called by the defendants testified emphatically from a statement of the facts containing a history of the case, and a later examination of the patient, that such a bump could not and did not cause the condition of the claimant's leg.

We have gone over the transcript of the evidence and read the arguments and examined the authorities cited, and we are abidingly satisfied that the judgment of the trial court is right and must be affirmed.

■■■ The law is well settled in this state concerning the binding and conclusive effect of the findings of the industrial commissioner when supported by sufficient competent evidence. The commissioner's findings of fact were to the effect that as to when, how, why, and where said alleged injury occurred, there was nothing in the record but pure conjecture; and that from information acquired from the doctor that such swelling was likely to follow a bruise after the lapse of two days, claimant merely assumed that he received a bump two days before the swelling began. The commissioner further found that it was mere speculation as to whether the claimant's disability arose out of his employment, and therefore claimant failed to sustain the burden of proving that the disability for which he seeks compensation resulted from injury arising out of and in the course of his employment. Under the record in this case the findings of the commissioner were conclusive.

This court said in the case of Swim v. Central Iowa Fuel Co., 204 Iowa 546, 547, 215 N. W. 603, 604:

"The finding of the commissioner upon questions of fact is made conclusive and binding upon the court by the statute, but, if the facts found do not support the order, or if there is not sufficient competent evidence in the record to warrant the industrial commissioner in making the same, such order may be set aside by the court. Rish v. Iowa Portland Cement Co., 186 Iowa 443, 170 N. W. 532. In the event that the record facts are in conflict, the finding of the industrial commissioner is final. Flint v. City of Eldon, 191 Iowa 845, 183 N. W. 344. See, also, Pappas v. North Iowa Brick & Tile Co., 201 Iowa 607, 206 N. W. 146; Tunnicliff v. Bettendorf, 204 Iowa 168, 214 N. W. 516."

And in the recent case of Shepard v. Carnation Milk Co., 220 Iowa 466, at page 469, 262 N. W. 110, 112, in an opinion by

Justice Powers, attention is called to the limitations upon the power of the court and the purpose of the enactment of the compensation law in the following manner:

"The limitation upon the power of the court in compensation cases must be kept clearly in mind. The purpose of the enactment of such legislation was to avoid litigation, lessen the expense thereof, and afford an efficient and speedy tribunal to determine and award compensation. Flint v. City of Eldon, 191 Iowa 845, 183 N. W. 344. To that end the act provides that, in the absence of fraud, the findings of the industrial commissioner on the facts are conclusive. The act contemplates that all controversy over disputed questions of fact shall end with the findings of the industrial commissioner. Section 1452, Code 1931. It is not the province of the court to review the evidence and determine whether or not it believes that the industrial commissioner reached a correct conclusion on the facts. We may well repeat here what we said in the case of Flint v. City of Eldon, supra, by way of quotation from a New York case (Rhyner v. Hueber Bldg. Co., 171 App. Div. 56, 156 N. Y. S. 903); 'It was the purpose of the legislature to create a tribunal to do rough justice—speedy, summary, informal, untechnical. With this scheme of the legislature we must not interfere; for, if we trench in the slightest degree upon the prerogatives of the commission, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality.' The task of the court is to enforce this legislative scheme, not to interfere with it. If, therefore, there is evidence from which the industrial commissioner could have found as he did, the court must not interfere with such findings."

This rule was announced in a case where the commissioner found in favor of the claimant. It is equally applicable in this case where the commissioner found against claimant.

■■■ Irrespective, then, of our sympathies for any particular claimant, if the compensation law is to remain workable and to answer the ends which were sought in its enactment, we are bound to adhere to the foregoing principles so often announced by this court. In this case we are not presented with even a close question of law. There is abundant competent evidence to support the commissioner's findings. This is especially true with reference to the causal connection between the receiv-

ing of the alleged bump and the condition that developed in the claimant's leg which caused his disability. Testimony of the claimant's own doctor amounted to nothing more than speculation and conjecture. This court has repeatedly held that this is not sufficient. In the case of Guthrie v. Iowa Gas & Electric Company, 200 Iowa 150, 156, 204 N. W. 225, 227, the court said:

"The testimony of the medical experts is merely to the effect that the injury to the knee might or might not have contributed to the tubercular condition that subsequently existed. There is no evidence tending to prove that the injury was of such a nature that, according to medical science, it would have been likely to or would probably have resulted in the condition described. As the physician puts it, it might have contributed to the injury, and it might not have done so.

"The rule in this state in cases of this character is well established. * * * Liability for an injury cannot be predicated upon such indefinite speculation and conjecture as is disclosed by the record in this case, which is the sole basis for recovery." Slack v. Percival Co., 198 Iowa 54, 199 N. W. 323; Shepard v. Carnation Milk Co., supra.

As to the burden of proof, the rule is stated in the case of Susich v. Norwood-White Coal Co., 207 Iowa 1129, 1132, 224 N. W. 86, as follows:

"Likewise, the rule as to the burden of proof in cases of this character is well settled by our prior decisions. It is elementary that, to entitle the claimant to compensation, the matters necessary to be shown by him must be proven by a preponderance of the evidence. Clearly, a causal connection between the injury and the possible inhalation of bad air must be based upon something more substantial than a mere possibility."

It therefore follows that the decision of the trial court must be and it is affirmed.—Affirmed.

STIGER, C. J., and all Justices concur.