C. W. NEAL, Administrator of the Estate of Joseph C. Frew, deceased, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Personal injury:** CAUSE OF DEATH: SUFFICIENCY OF EVIDENCE. In an action for the death of an employé, the facts relied upon as causing the death, where the same are disclosed wholly by circumstantial evidence, must be of such a nature and so related to each other that the conclusion as to the cause of death sought to be established thereby is the only fair and reasonable one to be drawn therefrom. Evidence held insufficient to·show that death was caused by reason of a defective switch blocking to the exclusion of any other theory.

*Appeal from Scott District Court.*— HON. JAMES W. BOLLINGER, Judge.

TUESDAY, OCTOBER 24, 1905.

ACTION to recover damages for the death of plaintiff's intestate alleged to have resulted from injuries received by him while in defendant's employ as switch tender, and to have been due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. *Reversed.*

*Carroll Wright* and *Cook & Dodge,* for appellant.

*Neal & Neal,* for appellee.

McCLAIN, J.— The appellant's contention is that the trial court erred in overruling a motion to direct a verdict in its favor and in submitting to the jury the question whether the deceased was injured by reason of defendant's negligence, assuming that there was evidence tending to show negligence on the part of defendant in having defective blocking between the rails at the switch where deceased was injured; and the sole question argued is as to whether there is sufficient evidence to support a verdict for the plaintiff.

Just prior to receiving the injury of which he died deceased, as employé of the defendant in its yards at Rock Island, where he was regularly employed as night switch tender, threw a switch for the purpose of having cars which were to be kicked westward pass from the track on which the train was standing to a parallel track, while the other cars were to be pushed westward upon the track on which the train was being operated. The switch which the deceased had just turned was about 100 feet east of an overhead viaduct, and the evidence tends to show that in the switching operation, in which deceased was at the time engaged, it would be necessary for him to pass westward from the switch he had just thrown to another switch west at the viaduct, and that he might have gone from the first switch, which was at the south side of the track on which the train was standing, to the second switch along an unobstructed course on the south side of that track.

It appears, however, from the testimony of one Ross, who was engaged with deceased at the time in the operation of switching and was near deceased when he threw the first switch, that, with some remark about seeing whether the cars would clear after they were kicked back so that the remainder of the train might be backed further westward on the track on which the train was being operated, deceased started across the track to the northward after the signal to back the train was given and after it was in motion, but before the cars which were to run off on the switch track had been cut loose, and was struck by the rear end of the train, receiving the injuries of which he died. Ross was the only person in a position to see what happened, and all he can say is that in the darkness he heard an exclamation from the deceased and saw his lantern go under the car, that he signaled to the conductor, and that the train, which was being backed, according to all accounts, at a speed of about four miles an hour, was stopped within one or two car lengths after the signal was given. Deceased was found lying across the north rail of the switch track between the two wheels of the rear truck, his trousers caught fast to the column bolt projecting downward from the car. The car wheel had, however, not passed over his body, but the large toe of his right foot had been crushed and the knee and hip on that side lacerated, and he was severely injured about the shoulders and head. His body was pinched in under the front of the rear wheel, so that it was necessary to uncouple the rear car and push it a foot or more westward in order that his body might be released. The place where the deceased was found after the train was stopped was about fifteen feet west of the point of the switch.

The evidence relied upon for the plaintiff as tending to show that the accident was the result of defendant's negligence was to the effect that the wooden blocking between the movable rail and the stationary rail at the north side of this switch track was loose, so that it would press down with

the weight of a person stepping upon it and allow the foot of such person to be caught between the two rails which were separated about five inches when the switch was open, as at the time of the accident. This piece of wooden blocking was three or four feet long, the eastern end about eight or ten feet from the point of the switch. The theory of counsel for plaintiff is that the deceased caught his right foot between the rails as a result of stepping on the eastern end of this blocking and was thus held until the car ran over or against him; and, as supporting this theory, they rely upon evidence that the right shoe and overshoe of deceased were torn open at the heel from the vamp upward and his shoestring was broken, and, also, that a piece of the trousers of deceased and a portion of his right kneecap were found next morning forced in between the ball of the north rail and the wooden blocking which was bolted on the inside thereof, between the ball and the base at the west end of the blocking, which has just been described as filling the space between the two rails. This is the only evidence in the record which can be claimed in any way to directly support the theory that the accident was due to the defective blocking.

The burden was on the plaintiff to establish, not only that the defendant was negligent in having a defective blocking between the rails at this switch, but also that the injury to deceased resulted from this defect. It is conceded that the connection between the defect and the injury was established, if at all, only by circumstantial evidence. " A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such nature and so related to each other that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true and yet they may have no tendency to prove the theory. This is the well-settled rule." *Asbach v. Chicago, B. & Q. R. Co.,* 74 Iowa, 251. If other conclusions may reasonably be drawn as to the cause of the

injury from the facts in evidence than that contended for, the evidence does not support the conclusion sought to be drawn from it. Verdicts must have evidence to support them, and the jury will not be permitted merely to conjecture how the accident occurred. In matters of proof they are not justified in inferring from mere possibility the existence of facts. *Wheelan v. Chicago, M. v. St. P. R. Co.*, 85 Iowa, 167. If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for. *Rhines v. Chicago & N. W. R. Co.*, 75 Iowa, 597.

It appears that the ground was icy, and, if deceased slipped and fell in attempting to pass across the track, he might have been run over and the piece of his clothing and the portion of his kneecap might have been forced between the ball of the rail and the blocking by the flange of the wheel, so that this piece of evidence does not in itself indicate that his foot had been caught between the rails. And this conclusion seems as probable as the other; for, so far as the evidence indicates, the deceased was not walking along the track in front of the moving car, but was going directly across the track, and in crossing the rail there would be no probability of his foot being caught so that it could not be extricated. The condition of the right foot of the deceased does not, as we understand the evidence, necessarily indicate that the shoe was caught between the rails and the foot forced out of it by the flange of the wheel, but is equally consistent with the crushing of the foot by the wheel, for it is to be noticed that the large toe of the right foot was crushed, and it is difficult to understand how such a result could follow from the flange crushing along the outside of the foot while it was held as in a vise between the two rails.

We are also impressed with the suggestion of the appellant's counsel that the proven facts are equally consistent with the theory that deceased attempted to climb upon the

moving car for the purpose of riding westward to a point opposite the switch on the other side of the viaduct, where, as it appears, he would be next called upon to engage in throwing a switch. We think we may take notice of the fact that freight cars are usually provided with footholds and handholds at the right-hand corner of the car at either end, and that, therefore, if deceased attempted to mount the car, he would have done so in this instance on the north side, and it is certainly a matter of general observation that switch tenders do on some occasions thus ride on moving cars in the performance of their duties. There was no evidence that it was usual for the deceased or other switch tenders in defendant's yards at Rock Island to thus ride, nor is there any evidence that it is contrary to the rules of the company for them to do so. If deceased did attempt to mount this car, and, missing his footing, did fall under its wheels, the accident might have occurred at the place and in the manner indicated by the evidence. This is, of course, a mere surmise, but we are justified in any surmise which is as consistent with the facts proven as the theory which is sought to be established by such facts for the purpose of determining whether the proven facts tend to support plaintiff's theory.

The surmise is not, however, foreign to the record, for a written statement, signed by the witness Ross two days after the accident, was introduced in evidence for the defendant as contradictory of his testimony on the stand, in which it is said the deceased attempted to get upon the car and slipped and the car wheel ran over his knee. When his attention was called to this statement, the witness emphatically denied its correctness and testified that he had signed it without reading all of it, and that he supposed it contained only the statements made by him to the agent, and that no such statement was made. He, however, affirmed the accuracy of the statement in many other particulars, and denied its accuracy only as to this statement and one or two others which are of minor importance. Of course,

it was for the jury to say whether they should believe his testimony on the stand, in which he emphatically denied that he had seen deceased attempt to mount the car, as against what purported to be, and in the main was, a correct written statement signed by him soon after the accident as to what happened, but we have thought it not improper to refer to this statement as suggesting a theory of the accident for the purpose of determining whether that theory is as consistent with the established facts as the theory relied upon for the plaintiff.

. The place where the deceased was found after the train was stopped has a particular significance as bearing on the theory that deceased caught his foot between the rails by reason of the defective blocking. It is conceded that, if deceased was thus caught, he must have been carried by the train much farther west than where he was found before the train stopped, for his body was not more than six feet from the east end of the blocking. The suggestion of counsel for plaintiff is that, when the engineer stopped his engine, the recoil of the cars was toward the engine and that the slack would be taken up so that the rear car would move forward ten or twelve feet and carry the deceased toward the place where he was first struck; but it seems to us that this is a mere surmise, and in no way tends to explain the fact that the deceased was found so near the place where it was claimed he was first struck by the moving car. If, after the train was started backward, the speed of the engine was decreased so that the cars moved faster than the engine, and a condition of tension existed throughout the train, then the stopping of the engine would certainly not cause any considerable recoil and movement forward of the rear car. If, on the other hand, the cars were being pushed backward at an increasing speed and their bumpers were in contact, then on the stopping of the engine they would run as much further as the slack would permit, and the recoil could not bring the

rear car closer to the engine than it was when the engine was stopped.

Now, it is simply incredible under the evidence that after deceased was struck by the rear end of the car the engine should not have moved backward more than six feet before the signal could be given to the engineer to stop and the train could be brought to a standstill. The train consisted of eighteen cars, and the testimony shows that the slack might amount to about ten or twelve feet for the entire train, but no rebound or movement forward of the rear car after the engine was stopped could, in our judgment, have brought the deceased back to within six feet of where he was first struck. There is evidence that there was a bloody spot ten feet west of where deceased was found where the train stopped, but it does not appear how this spot was caused. The deceased may have been placed there after he was taken out from between the wheels. But in any view this bloody spot was too near the blocking to support the theory that the deceased was struck while his foot was caught in the blocking. The facts not only do not tend to support the theory that deceased was struck while his foot was fast at the defective blocking, but, on the other hand, are much more consistent with the supposition or surmise that he may have attempted to mount the moving car and fallen in front of the wheels; for, if his purpose was to mount the moving train, he would probably have gone eastward to meet it and have been run over somewhere east of the blocking. But there is no evidence that he went eastward to meet the moving car, and all we need say is that the place where he was found was not the place where he would have been found if he had been struck at the blocking.

We reach the conclusion that the evidence does not tend to support the claim that the accident resulted from deceased's foot being caught by reason of the defective blocking, and on no other theory could the verdict of the jury under the instructions have been for the plaintiff. The jury

are not permitted to find material facts without evidence or on mere conjectures as to the truth of one of two or more equally probable or possible theories having different legal results. *Reynolds v. Burgess Sulphite Fiber Co.* (N. H.) 59 Atl. Rep. 615.

The judgment of the trial court is therefore *reversed.*