WILLIAM M. VAN DEGARDE, Appellant, v. OSCEOLA COUNTY COOPERATIVE CREAMERY ASSOCIATION et al., Appellees.

No. 45959.

JUNE 16, 1942.

L. L. Corcoran, of Sibley, for appellant.

Meltzer & Vogl, of Sibley, and Shull & Marshall, of Sioux City, for appellees.

WENNERSTRUM, J.—■ Appellant, William M. Van De-Garde, seeks to recover a workmen's-compensation award against the appellee, Osceola County Cooperative Creamery Association, claimed employer, and its insurance carrier, for an injury received. The appellee Association asserts as a defense that appellant is not an employee but that he is an independent contractor. The appellee also alleges that the injuries received by the appellant did not arise out of and in the course

of his claimed employment. Appellant's application for compensation was denied by the deputy industrial commissioner, whose holdings and conclusions, upon review by the industrial commissioner, were confirmed and approved. Appellant then appealed to the district court of Osceola county, Iowa, which court affirmed the decision of the industrial commissioner. Claimant has appealed to this court for a review of the decision of the trial court.

The facts as shown by the record before us are as follows:

On January 10, 1939, the appellant was injured while engaged in his work of collecting and delivering cream to the Osceola Cooperative Creamery of Sibley, Iowa. On that date he slipped and fell on ice while taking a cream can from a cooler located on a farm where he had stopped. The diagnosis of the doctors showed that his injuries consisted of a sacroiliac sprain.

The relations between the appellant and the Osceola Cooperative Creamery Association which bear upon the question as to whether or not the appellant was an employee or an independent contractor are as follows:

Appellant owned the truck which he operated, and paid for his own gas, oil, and its upkeep. He also paid for all liability and truck insurance, and paid out of his own resources and income for any part-time helper that he might use. He had been engaged in the work of cream hauling for the appellee Association for approximately 13 or 14 years, and the inception of this relationship was brought about by the purchase of an established cream route from another hauler. The Association did not furnish any of the equipment used by the hauler with the exception of the cans in which the cream was delivered to the creamery. The cream was tested at the creamery for butterfat and the hauler was paid a commission, according to the amount of butterfat, for the service rendered in delivering the cream. The commission was increased in relation to the distance of the haul. The member-customers of the Association were paid every two weeks by the creamery for the cream received from them and brought in by the hauler. Checks were delivered by the owner or driver of the cream route. The

amount of the commission paid to the hauler for handling the cream was deducted from the check. As a convenience to the customers, haulers frequently advanced their own cash to the customer for the cream received. The Creamery Association did not have any control over the working hours of the cream haulers, although each hauler was expected to get his collection of cream into the creamery as early as possible each day. The record further discloses that in the event the hauler desired to discontinue his services in connection with the collection of cream he could sell his route and equipment to any other person at such a price as he could obtain. However, the Association reserved the right to investigate the "character, ability, suitability and financial responsibility" of the prospective purchaser. It is further shown that if a hauler desired to dispose of his route, and did not find a purchaser to whom he could sell or who would be approved by the Association, the Association would purchase the route and the equipment at a price to be agreed upon. The evidence disclosed that at the time of the initial hearing the Association was the operator of one of approximately 19 routes. On the sides of the boxes of the trucks was painted "Cooperative Creamery." On the back were the words "Farmer owned, operated and controlled," and on the bottom line, "Sibley, Iowa." It is also disclosed that at times the manager of the Creamery Association went with the drivers on the routes to help them interview prospective members and explain the policies of the Association. If the management of the creamery was not satisfied with the manner in which the hauler was serving the customer-members of the Association, it would give the hauler time in which to sell his route or to make arrangements with the Creamery Association for the purchase of the route and equipment by them.

I. The facts as heretofore related are not in dispute. In any case, it is within the province of this court, on appeal, to review the conclusions of the industrial commissioner and to determine whether or not there is sufficient competent evidence to support the findings of the commissioner. Guthrie

v. Iowa Gas & Elec. Co., 200 Iowa 150, 204 N. W. 225; Boswell v. Kearns Funeral Home, 227 Iowa 344, 288 N. W. 402; Davis v. Bjorenson, 229 Iowa 7, 293 N. W. 829.

Inasmuch as there is no dispute in the record as to the facts, we are permitted to review them and to ascertain, under the law, whether or not an employer-employee relationship existed between appellant and the Creamery Association.

■ II. This court has on numerous occasions passed upon and commented on the necessary essentials to establish this relationship. The consideration to be given to this particular problem has been very succinctly set forth in the case of Mallinger v. Webster City Oil Co., 211 Iowa 847, 851, 234 N. W. 254, 256, where we said:

"An independent contractor, under the quite universal rule, may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results. The commonly recognized tests of such a relationship are, although not necessarily concurrent, or each in itself controlling: (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer."

We do not feel that any benefit would come to the bench and bar of this state by a review of our many authorities that have passed upon the legal questions involving an employer-employee relationship. Likewise, we do not see that anything would be gained by a detailed application of these general rules involving this question to the circumstances as have previously been set forth. We have, however, given careful con-

sideration to the facts as disclosed and as applied to the general tests herein set out, and have concluded that there was no employer-employee relationship. Consequently, the conclusions and holdings of the industrial commissioner and the trial court are found to be correct. The trial court is therefore affirmed. —Affirmed.

All JUSTICES concur.