RONALD BRADSHAW, appellee, v. IOWA METHODIST HOSPITAL, appellant.

No. 49886.

(Reported in 101 N.W.2d 167)

376

FEBRUARY 9, 1960.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellant.

Lex Hawkins, of Des Moines, for appellee.

GARFIELD, J.—Ronald Bradshaw brought this law action against Iowa Methodist Hospital in Des Moines to recover for personal injuries allegedly resulting from a fall in the physiotherapy room of the hospital where plaintiff was a patient March 30, 1957. The only specification of negligence submitted to the jury is that defendant was negligent in leaving plaintiff unattended when its employees knew or should have known he was in such condition that he needed constant attention under the circumstances then existing. Trial resulted in jury verdict and judgment for plaintiff of $79,025.94. Defendant has appealed.

Plaintiff, 38 on March 30, 1957, married, with two children, is a millwright who worked at the Maytag plant in Newton from January to September 1956. On September 21 he fell to the floor of the plant on his back and hip. About a week later he started

getting burning pain in his back and calf of his leg. He worked three days and then saw Dr. John T. Bakody, a neurosurgeon in Des Moines. October 20, 1956, Doctor Bakody removed a protruded intervertebral disc at *the fifth* lumbar interspace. He and the Newton doctor accepted the fall on September 21 as the reliable cause of this protrusion.

October 28, following the operation, plaintiff was discharged from defendant-hospital to go home. For about two weeks in November and December he was a patient at Mercy Hospital in Des Moines because of numbness in his right side. In January (1957) Doctor Bakody told plaintiff he could return to the Maytag plant to do light work for three to six months. However, Maytag then had no such work for him.

March 21, 1957, plaintiff entered defendant-hospital again. His back was very sore and he could not sleep. He was given whirlpool hot baths daily in the physiotherapy department. In his room on the morning of March 27 he had "sort of a dizzy spell, felt kind of lightheaded and asked the nurse if the medicine she was giving caused it." In the afternoon of March 29 plaintiff had another dizzy spell in his room. He told another nurse about it and asked if it could be connected with the heart. The next morning plaintiff felt "kind of dizzy, a little bit lightheaded", but walked to the physiotherapy room on the floor below for his daily whirlpool bath.

The temperature gauge in the water tank was eight degrees above normal and plaintiff felt hot and "kind of dizzy." He told this to the girl who filled the tank and she in turn called Mr. Peters, supervisor of the department, who adjusted some valves to lower the water temperature. When plaintiff was removed from the tank he told the girl he felt a little dizzy and was "awful hot." Mr. Blodgett, an employee in the department, together with an aid, put plaintiff on a table. Blodgett dried him off, helped him on with his pajamas and had him stand on the floor to pull them up.

He was then in a booth with a curtain drawn around it. In addition to the long table on which plaintiff was placed, a small table and chair were inside the curtain. Mr. Peters left plaintiff unattended and said he would be back after plaintiff finished dressing. Plaintiff got "sort of a dizzy spell, * * * tried to grab

hold of the chair to hang on and fell from the chair" to the terrazzo floor after apparently fainting. When plaintiff fell he lit on his left shoulder and may have gone flat on his back. It is the claimed damage resulting from this fall for which recovery is sought herein.

Plaintiff testifies he remembered nothing after his fall until a Mrs. Scott, who was in the physiotherapy room, called that a man needed help. Peters and Blodgett helped plaintiff up and he was returned to his room in a wheelchair. He was discharged from defendant-hospital five days later. Plaintiff says that after his fall the lower part of his back hurt "an awful lot more."

About two weeks after he was discharged from defendant-hospital plaintiff was a patient in a Chicago hospital a few days because of severe pains in his thigh and leg. In July (1957) Doctor Bakody sent plaintiff to Mercy Hospital in Des Moines for X rays of his back. In August he was at the Mayo clinic in Rochester. Thanksgiving week plaintiff went to Broadlawns Hospital in Des Moines for about two weeks. December 18, 1957, Doctors Johnson and Miller at Mayos operated on plaintiff's back, removed a protruded, degenerated disc at *the fourth* lumbar interspace and fused the back with bone grafted from plaintiff's shin, covering the fourth and fifth lumbar vertebrae and the sacrum.

I. Plaintiff contends his fall in defendant-hospital on March 30 was a proximate cause of the condition the Mayo doctors found the following December 18. Defendant's first assignment of error is that the evidence is insufficient to warrant a finding for plaintiff on this issue. In considering this and the second assigned error of course we must view the testimony in the light most favorable to plaintiff. Priebe v. Kossuth County Agricultural Assn., Inc., 251 Iowa 93, 95, 99 N.W.2d 292, 293, and citations.

Dr. Einer W. Johnson, the Mayo surgeon, asked by a long hypothetical question to express his opinion whether there would be causal connection between the fall on March 30 and the condition he found in December, testified "I think there could be." Standing alone this is insufficient proof of the claimed causal connection. Such an answer is usually held to indicate only a possibility, rather than probability, of the alleged causal

relation and hence insufficient. See Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, 313; Rose v. John Deere Ottumwa Works, 247 Iowa 900, 910, 76 N.W.2d 756, 761; Boswell v. Kearns Garden Chapel Funeral Home, 227 Iowa 344, 351, 288 N.W. 402, and citations; Annotation, 135 A. L. R. 516, 517.

However, we have held such expert evidence as that given here is sufficient to warrant submitting to the jury the issue of proximate cause when coupled with other testimony, nonexpert in nature, that plaintiff was not afflicted with any such condition prior to the accident in question. Rose v. John Deere Ottumwa Works, supra, and citations; Chenoweth v. Flynn, supra. See also annotation, 135 A. L. R. 516, 532 et seq. Plaintiff contends there is such other evidence here.

In the Rose case the doctor who attended plaintiff part of the time he was disabled testified his condition was the result of trauma and "could have been caused" by such an injury as plaintiff said he suffered. Plaintiff stated the injury was the only one he ever received, his back never troubled him before and, in effect, never ceased to trouble him thereafter although his work was much lighter than before. We held that under the combined testimony of the doctor and plaintiff his disability *was* caused by the injury.

In Chenoweth v. Flynn, supra, one of the doctors who treated plaintiff testified an ulcer on a foot is usually the result of trauma and the accident could cause the ulcerated condition for which he treated her. Plaintiff said she never had foot trouble prior to her accident, was then bruised, within a few days a seepage developed and she constantly suffered pain. We held a jury question was created on the issue of causation, citing Rose v. John Deere Ottumwa Works, supra.

We think plaintiff's case is considerably less strong than the Chenoweth and Rose cases, it does not appear the fall in defendant's hospital on March 30 was the *probable* cause of the condition Doctor Johnson found on December 18 and the finding of such causal connection could not be reached without resort to speculation or conjecture.

Doctor Johnson himself testified it is entirely possible plaintiff's difficulty could have gone back many years, a protruded disc can result from numerous causes such as acute

trauma, repetitious trauma of heavy labor without specific accident, people who do heavy lifting and bending for years have them when they lift that one more time, but generally degeneration or wear and tear itself, without any other trauma or blow, does not result in a ruptured disc. For about thirteen years before plaintiff fell at Maytags he did heavy lifting and bending.

Plaintiff's witness Doctor Bakody, the neurosurgeon whom plaintiff consulted and who performed the first disc operation, testified on cross-examination there is no question but what injury can bring on a protruded disc but as many as one third such cases have no injury, one who does heavy lifting over a period of time could have a protruded disc because of such work, without any injury, he had a patient develop a protrusion from picking up a newspaper. Doctor Bakody was not asked to express an opinion upon the causal relation between the fall on March 30 and the condition found on December 18. And plaintiff did not call as a witness either Dr. Neil J. McGarvey or Dr. Joseph G. Schupp who, along with Doctor Bakody, treated plaintiff throughout most of the time following his fall at Maytags.

Dr. F. Eberle Thornton, an orthopedic surgeon, at the request of defendant's attorney, examined plaintiff and took his history about two months before the trial. He expressed the opinion plaintiff was having trouble at the time he fell, the fall merely made the diagnosis more apparent, the fall alone did not cause the last disc nor result in his having to undergo the fusion operation and that would probably have resulted even without the fall. On cross-examination he admitted it is possible such a fall would be sufficient to cause a ruptured disc.

Plaintiff strongly relies upon Doctor Bakody's testimony that at the time of the first operation on October 20, 1956, he found no ruptured disc between the fourth and fifth lumbar vertebrae. However this was five months and ten days before the fall in defendant-hospital and fourteen months before the operation at Mayos. And this fact testified to by Doctor Bakody, and substantially all other circumstances relied upon by plaintiff on the issue of causation, including plaintiff's testimony that after his release from defendant-hospital and he had leg pains similar to those with his first disc, were included in the hypo-

thetical question to Doctor Johnson. Yet he was apparently unwilling to express an opinion more definite than "I think there could be" when asked if there would be causal connection between the fall on March 30 and the condition he found in December. It is fair to conclude too that in saying it is entirely possible plaintiff's difficulty could have gone back many years, Doctor Johnson had in mind this circumstance testified to by Doctor Bakody and the other assumed facts relied upon by plaintiff. If, after assuming such facts, Doctor Johnson would say only that the fall could be the cause of the condition he found in December a jury of laymen, from substantially the same facts, could hardly reach a conclusion more favorable to plaintiff.

There is no testimony similar to that in the Chenoweth and Rose cases, supra, to the effect plaintiff had no trouble with his back prior to his fall in defendant-hospital. Indeed the contrary appears. As previously stated, he was hospitalized about two weeks in November and December 1956 because of pain in his back and numbness in his right side. Also, as stated, his back was very sore and painful and he could not sleep when he entered defendant-hospital March 21, 1957. During these last two confinements Doctors McGarvey or Schupp, or both, saw plaintiff nearly every day.

Plaintiff's testimony as part of his case that he had not fallen or injured his back at other times than on September 21, 1956, and March 30, 1957, is limited as to time. He said he had no previous back injuries at Maytags. But, as stated, he did not start work there until January. He also testified he received no injuries after leaving defendant-hospital on April 4 or during the summer.

We may observe that the only evidence as to the severity of plaintiff's fall on March 30 is that of Mrs. Emma J. Scott. She said he lit on his left shoulder and "may have gone flat on his back. * * * I wouldn't say the man fell hard to the floor, looked as if he rolled kind of easy, but I broke a bone going down easy. * * * He didn't fall with any violent noise." Evidently on the strength of this testimony the hypothetical question to Doctor Johnson assumes plaintiff fell to the floor, landing on his shoulder and back.

 Such a matter as the causal connection between plain-

tiff's fall in defendant-hospital and his condition at the time of the operation in December is not within the knowledge and experience of ordinary laymen. It is a question with respect to which only a medical expert can express an intelligent opinion. In other words the causal connection between the fall and subsequent disability is essentially within the domain of expert testimony. Ramberg v. Morgan, 209 Iowa 474, 481, 218 N.W. 492; Tracy v. Liberty Oil Co., 208 Iowa 882, 891, 226 N.W. 178; Bearman v. Prudential Ins. Co. of America, 10 Cir., Kan., 186 F.2d 662, 665, and citations; In re Sevigny's Case, 337 Mass. 747, 151 N.E.2d 258, 260; Drakulich v. Industrial Comm., 137 Ohio St. 82, 27 N.E.2d 932, 935. See also Chenoweth v. Flynn, supra, 251 Iowa 11, 16, 99 N.W.2d 310, 313.

As previously indicated, medical testimony it is possible a given injury was the cause of subsequent disability or "could have" caused it is insufficient, standing alone, to take such issue to the jury. Testimony indicating probability or likelihood of such causal relation is necessary. Boswell v. Kearns Garden Chapel Funeral Home, supra, 227 Iowa 344, 351, 288 N.W. 402, and citations; Bearman v. Prudential Ins. Co. of America, supra; Harper v. Young, 139 Neb. 624, 298 N.W. 342; Drakulich v. Industrial Comm., supra; Aiken v. Industrial Comm., 143 Ohio St. 113, 53 N.E.2d 1018, 1020; Annotation 135 A. L. R. 516, 517, stating the rule appears to be well settled.

Plaintiff's excellent brief seems to assert the rule just stated is changed in Iowa by Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646. This is a misconception of the cited opinion. It deals with the admissibility, not the sufficiency, of expert opinions as to causation which are objected to as invading the province of the jury. It points out the fallacy of such an objection and holds such testimony admissible, if it is a proper subject of expert opinion upon a question of fact, whether the witness testifies a given injury was, probably was or possibly was the cause of later disability or death. One reason the Grismore decision gives for upholding the admissibility of expert opinions as to what was the cause is that opinions as to what might or could be the cause do not necessarily go further than to state a possibility and that does not satisfy the burden of

proof. See quotation with approval at page 351 of 232 Iowa, page 658 of 5 N.W.2d, from O'Leary v. Scullin Steel Co., 303 Mo. 363, 375, 260 S.W. 55, 59.

■ II. There is no merit in defendant's second assigned error that the evidence is insufficient to raise a jury question on the issue of negligence because, it is said, no qualified expert testified defendant failed, in leaving plaintiff unattended at the time he fell, to exercise the degree of care employed by other Des Moines hospitals.

■ Defendant contends this is a malpractice case and relies upon the rule that ordinarily evidence of the requisite skill and care must come from experts. The rule relied upon is well settled in malpractice actions. But there are recognized exceptions to it. One of them for which there is abundant authority is that where a physician's lack of care is so obvious as to be within the comprehension of laymen, and to require only common knowledge and experience to understand, expert testimony is not necessary. Stickleman v. Synhorst, 243 Iowa 872, 879, 52 N.W.2d 504, 508, and citations; Daiker v. Martin, 250 Iowa 75, 81, 91 N.W.2d 747, 751; Annotation, 141 A. L. R. 5, 12.

Plaintiff argues this is not a malpractice case but one to recover for negligence of defendant in leaving him unattended shortly after its attendants were informed at least three times he was having dizzy spells. He further contends if it were a malpractice action the above exception to the rule relied upon by defendant would apply and in any event there is sufficient testimony to satisfy the rule.

It seems obvious this case differs from the usual action against a physician or surgeon for malpractice. However, in any view of the nature of the action, there is substantial evidence to support the finding defendant was negligent, under the circumstances, in leaving plaintiff unattended when he fell.

Plaintiff testified that except for the time he fell he was attended at all times while in defendant's physiotherapy room, also that he has had such treatments in other Des Moines hospitals and was attended at all times while in the physiotherapy room there. The supervisor of defendant's physiotherapy room testified that when a patient gets dizzy in a bath he is kept under observation closely. Defendant's witness Doctor Thornton said

in effect on cross-examination that if a patient complained to the attendants of dizzy spells in the ordinary hospital he would have been watched, and the witness would not say plaintiff would receive no more care at other Des Moines hospitals than that furnished by defendant if he had recently notified the nurses of dizzy spells. Dr. Harry Sandberg, chief physiatrist at the Veterans Hospital in Des Moines, testified in substance that a patient known to be having dizzy spells should be kept under close observation.

The testimony of plaintiff and Doctor Thornton seems to fall within the rule, subject to certain exceptions not applicable here, that while it is not conclusive, evidence of what is usual and customary is generally admissible on the issue of negligence. Webber v. E. K. Larimer Hdwe. Co., 234 Iowa 1381, 1385, 1386, 15 N.W.2d 286, 288, 289, and citations; Langner v. Caviness, 238 Iowa 774, 778, 28 N.W.2d 421, 423, 172 A. L. R. 1135, 1137, and citations; Gibson v. Shelby County Fair Assn., 246 Iowa 147, 151, 65 N.W.2d 433, 435, 436, and citations; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1016, 82 N.W.2d 82, 89. Doctor Sandberg's testimony bears more directly on the issue of defendant's negligence in the respect submitted to the jury.

III. Defendant assigns error in the court's striking from its answer, on plaintiff's motion, allegations that he was entitled to workmen's compensation for the injury at Maytags on September 21, 1956; he received compensation from Maytag's insurance carrier from October 31, 1956, to May 13, 1957; if plaintiff was injured on March 30, 1957, it was in the course of treatment necessitated by, and proximate to, the original injury; plaintiff was entitled to workmen's compensation for any disability caused by the alleged injury in defendant-hospital; the compensation act affords his exclusive remedy not only for the original injury but for the alleged one of March 30; in August 1957 plaintiff presented to Maytag a report of the injury for which recovery is now sought herein; plaintiff, Maytag and its insurer agreed to further compensation for treatment of said injury; by reason thereof plaintiff elected to proceed under the compensation act and said agreement discharges defendant from

liability for its treatment of plaintiff and he is estopped from maintaining this action.

Plaintiff's reply admits the injury of March 30 was in the course of treatment of and proximate to the original injury and he is entitled to compensation for the disability caused by the injury in defendant-hospital but alleges no additional compensation was received as a result thereof and all of it was for the original injury. Plaintiff denies any claim against defendant was discharged.

We think it was not error to strike the above allegations of the answer as insufficient to constitute a defense.

■ Numerous decisions hold that where one negligently injures another who exercises reasonable care in selecting a physician to treat the injury, and it is aggravated or increased by the physician's negligence, the original tort-feasor is liable for the results of the treatment. Phillips v. Werndorff, 215 Iowa 521, 522, 243 N.W. 525, and citations; Johnson v. Selindh, 221 Iowa 378, 382, 383, 265 N.W. 622; Annotations, 8 A. L. R. 506, 39 A. L. R. 1268, 126 A. L. R. 912; 15 Am. Jur., Damages, section 85; 25 C. J. S., Damages, section 20, page 477. To like effect is Restatement, Torts, section 457.

■ By analogy to the above rule it is also generally held that a workman who receives an injury which entitles him to workmen's compensation may have compensation for an aggravation or increase thereof in its treatment provided he is not negligent in selecting the person who administers such treatment. Cross v. Hermanson Brothers, 235 Iowa 739, 741, 742, 16 N.W.2d 616, 617, and citations; Huntoon v. Pritchard, 371 Ill. 36, 20 N.E.2d 53, 57; Luongo's Case, 313 Mass. 440, 47 N.E.2d 938; Parchefsky v. Kroll Bros., 267 N. Y. 410, 196 N.E. 308, 310, 98 A. L. R. 1387, 1388; Baker v. Wycoff, 95 Utah 199, 79 P.2d 77, 81; 99 C. J. S., Workmen's Compensation, section 207; 58 Am. Jur., Workmen's Compensation, section 279.

And the rules just mentioned seem equally applicable to negligent treatment of an injury by nurses or other employees of a hospital in which the injured person is treated. See Feinstone v. Allison Hospital, 106 Fla. 302, 143 So. 251; Restatement, Torts, section 457, Comments c and d; 26 Am. Jur., Hospitals and Asylums, section 14; 15 Am. Jur., Damages, section

85, page 496. See also Lucas v. City of Juneau, D. C., Alaska, 127 F. Supp. 730, 732.

 It does not follow from the fact plaintiff has the right to obtain *the statutory compensation* from Maytag for the results of his treatment by this defendant that he may not sue defendant at common law for all *the damages* caused thereby. Workmen's compensation according to the statutory scale is one thing. The right thereto does not depend upon negligence of the employer but arises from the contract of hire into which the compensation act is read. Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 1355, 172 N.W. 191. Damages at common law for the results of an injury negligently caused are quite different. Southern Surety Co. v. Chicago, St. P., M. & O. R. Co., 187 Iowa 357, 361, 174 N.W. 329.

 Certainly plaintiff had a right of action at common law in tort against this defendant for the damages resulting from its alleged negligent treatment of him. Baker v. Wycoff, 95 Utah 199, 79 P.2d 77, 82, 83; Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575, 578; Lakeside Bridge & Steel Co. v. Pugh, 206 Wis. 62, 238 N.W. 872, 873. He still has that right unless our compensation act has taken it from him. We find nothing in the act which does so. Our compensation law does not abolish common-law actions in tort except those between employee and employer. The provision of section 85.20, Codes, 1954, 1958, that the rights provided in chapter 85 for an employee on account of injury shall be exclusive of all other rights of such employee applies only to actions against the employer (Maytag here) and does not prevent an injured employee from suing third persons at common law. 101 C. J. S., Workmen's Compensation, section 983, page 459.

Precedents which support the views just stated include Southern Surety Co. v. Chicago, St. P., M. & O. R. Co., supra, 187 Iowa 357, 361, 362, 174 N.W. 329; Black v. Chicago G. W. R. Co., 187 Iowa 904, 917–921, 174 N.W. 774; Fidelity & Casualty Co. v. Cedar Valley Electric Co., 187 Iowa 1014, 1018–1021, 174 N.W. 709; American District Telegraph Co. v. Kittleson, 8 Cir., Iowa, 179 F.2d 946, 951–953; Duprey v. Shane, 39 Cal.2d 781, 249 P.2d 8, 13, 14; Gay v. Greene, 91 Ga. App. 78, 84 S.E.2d 847; Huntoon v. Pritchard, supra, 371 Ill. 36, 20

N.E.2d 53; Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913; Polucha v. Landes, 60 N. D. 159, 233 N.W. 264, 269; Benson v. Sioux Falls Medical and Surgical Clinic, 62 S. D. 324, 252 N.W. 864; Fauver v. Bell, supra, 192 Va. 518, 65 S.E.2d 575. See also Note 43 Iowa Law Review 352.

A statute will not be construed as taking away a common-law right existing at the time of its enactment unless that result is imperatively required. American District Telegraph Co. v. Kittleson, supra, at pages 952, 953 of 179 F.2d. See also King v. Viscoloid Co., 219 Mass. 420, 106 N.E. 988, 989, Ann. Cas. 1916D 1170; State for Benefit of Workmen's Comp. Fund v. E. W. Wylie Co., 79 N. D. 471, 58 N.W.2d 76, 83; Fauver v. Bell, supra, at page 522 of 192 Va., page 578 of 65 S.E.2d.

The allegations of defendant's answer above referred to were properly stricken if, as we hold, they do not constitute a complete defense to this action. We are not called upon to determine the right of Maytag or its insurer to be indemnified, under Code section 85.22 or otherwise, out of any recovery by plaintiff in this cause to the extent of compensation paid him because of the results of defendant's treatment. The answer does not allege compensation has been paid plaintiff because of any of the matters he complains of herein but only that an agreement for such compensation was made. According to the answer actual payments ceased about three months before the injury now complained of was reported to Maytag.

In support of this assigned error defendant relies upon Paine v. Wyatt, 217 Iowa 1147, 251 N.W. 78, which holds an action by the injured workman for malpractice of a surgeon is not authorized by what is now Code section 85.22 and hence would not lie. The opinion overlooks several decisions of ours, heretofore cited, and many from other jurisdictions, some of which are cited, that the compensation act does not abolish tort actions except as between employee and employer. The act was not intended to, and does not, confer rights or benefits upon third parties not subject to any of its burdens. We think the correct approach is to inquire whether the compensation law abolishes tort actions against third parties, not whether it expressly authorizes them. Paine v. Wyatt also overlooks the fact the statutory scale of compensation is quite different from full

damages resulting from a tortious act for which damages the employer is not liable.

Paine v. Wyatt, supra, has been severely criticized. Article by Prof. Maurice H. Merrill, 32 Iowa Law Review 1, 2; Note 43 Iowa Law Review 352, 356 to 359. Schumacher v. Leslie, supra, 360 Mo. 1238, 232 S.W.2d 913, overrules Hanson v. Norton, 340 Mo. 1012, 103 S.W.2d 1, which followed Paine v. Wyatt. See also Benson v. Sioux Falls Medical and Surgical Clinic, supra, 62 S. D. 324, 252 N.W. 864, 867. We are satisfied the Paine opinion cannot be logically upheld and must be disapproved. It is contrary to most decisions in other jurisdictions bearing on the question.

Some compensation laws provide in substance that upon payment of compensation all claims of the injured workman against third parties pass to the employer or his insurer. Under such statutes it is held the employer or his insurer must bring an action for malpractice in treating the injured workman and the latter may not do so. Overbeek v. Nex, 261 Mich. 156, 246 N.W. 196; Parchefsky v. Kroll Bros., supra, 267 N. Y. 410, 196 N.E. 308, 311, 312, 98 A. L. R. 1387, 1390, 1391; Polucha v. Landes, supra, 60 N. D. 159, 233 N.W. 264; Baker v. Wycoff, supra, 95 Utah 199, 79 P.2d 77, 81. See also 101 C. J. S., Workmen's Compensation, section 1044. Since our act contains no such provision these decisions are not here in point.

IV. The remaining error assigned which need be considered is the refusal of defendant's third requested instruction stating it is a hospital's duty to carry out orders of physicians in administering treatment and if plaintiff was injured as a result of negligence of his physicians in prescribing treatment defendant would not be responsible for such negligence unless it would have been apparent to an ordinary, reasonable person.

The argument in support of this assignment is that plaintiff's doctors, selected by him, were independent contractors, not defendant's employees for whose negligence it would be liable, the verdict may be based upon a finding they were negligent in not ordering that plaintiff not be left unattended and the jury's belief defendant is liable for such negligence.

That plaintiff's doctors, selected by him, were independent contractors for whose negligence defendant would not

be liable may be accepted. Christensen v. Des Moines Still College, 248 Iowa 810, 814, 815, 82 N.W.2d 741, 744; Iterman v. Baker, 214 Ind. 308, 15 N.E.2d 365, 370; Schloendorff v. Society of New York Hospital, 211 N. Y. 125, 105 N.E. 92, 93, 94, 52 L. R. A., N. S., 505, Ann. Cas. 1915C 581; Stuart Circle Hospital Corp. v. Curry, 173 Va. 136, 3 S.E.2d 153, 124 A. L. R. 176, 184, and Annotation, 186, 190–194; 41 C. J. S., Hospitals, section 8c(2), page 346. See also Frost v. Des Moines Still College, 248 Iowa 294, 303–307, 79 N.W.2d 306, 312-315.

However, there is neither pleading nor proof plaintiff's doctors were negligent in his being left unattended when he fell. There is no claim made against the doctors nor against defendant based upon any omission of theirs. There is no testimony they were informed, *prior to his fall,* plaintiff was having dizzy spells. The nurses did not enter this fact in the hospital record before the fall.

The court gave the familiar instruction that a corporation can act only through its employees and agents. Also that defendant would be liable for the negligence of its employees in the hospital. The instruction upon the submitted specification of negligence stated it was defendant's duty through its physiotherapy department to give plaintiff such reasonable care and attention as it knew, or in the exercise of reasonable care should have known, his condition required, and such duty is measured by the degree of care customarily exercised by physiotherapy departments of hospitals generally in the community.

It is extremely unlikely the verdict was based upon a finding plaintiff's doctors were negligent, in the absence of pleading or proof thereof, or that defendant was liable therefor. It was not error to refuse defendant's third requested instruction.

V. Since the conclusion reached in Division I hereof calls for a reversal and remand for another trial it is unnecessary to consider two other assigned errors—denial of a new trial for claimed newly discovered evidence, and excessiveness of the verdict. This is not a case where we should enter, or direct the trial court to enter, final judgment for defendant under rule 349, Rules of Civil Procedure.—Reversed and remanded.

All JUSTICES concur.