# IN THE SUPREME COURT OF IOWA

No. 17–2068

Filed May 3, 2019

**DILLON CLARK, AGNES DUSABE, MUSA EZEIRIG, ZARPKA GREEN, ABRAHAM TARPEH,** and **DUSTY NYONEE,**

Appellants,

vs.

**INSURANCE COMPANY STATE OF PENNSYLVANIA,**

Appellee.

---

Appeal from the Iowa District Court for Jasper County, Terry Rickers and John D. Lloyd, Judges.

Interlocutory appeal from district court judgment dismissing action. **AFFIRMED.**

Matthew M. Sahag of Dickey & Campbell Law Firm, PLC, Des Moines, for appellants.

Keith P. Duffy and Mitchell R. Kunert of Nyemaster Goode, P.C., Des Moines, for appellee.

D. Brian Scieszinski of Bradshaw Fowler Proctor & Fairgrave, Des Moines, for amici curiae Iowa Association of Business and Industry, Employers Mutual Casualty Company, and United Fire & Casualty Company.

**APPEL, Justice.**

In this case, employees and former employees of an Iowa manufacturing company brought a common law tort claim against the employer's workers' compensation insurance carrier. The claim alleged that the insurance carrier failed to conduct or negligently conducted an insurance inspection at the company's manufacturing facility and that the omission or action caused serious health problems for plaintiffs.

The insurance carrier moved to dismiss the petition based on Iowa Code section 517.5 (2017)[1]. This Code provision provides, "No inspection of any place of employment made by insurance company inspectors . . . shall be the basis for the imposition of civil liability upon the inspector or upon the insurance company . . . ." *Id.* Plaintiffs resisted, arguing that the statutory provision is unconstitutional as violative of equal protection, inalienable rights, and due process under article I, sections 1, 6, and 9 of the Iowa Constitution. The district court held the provision constitutional and dismissed the actions.

We granted interlocutory review. For the reasons expressed below, we affirm the judgment of the district court.

## I. Factual and Procedural Background.

TPI Iowa, LLC is a wind blade manufacturing facility located in Newton, Iowa. TPI employs hundreds of employees at its Newton plant. The Insurance Company of the State of Pennsylvania (ICSOP) is TPI's workers' compensation insurer. Plaintiffs Dillon Clark, Agnes Dusabe, Musa Ezeirig, Zarpka Green, Dusty Nyonee, and Abraham Tarpeh are current or former employees of TPI.

---

[1]All references are to the 2017 Iowa Code unless otherwise noted.

Plaintiffs filed a petition in district court naming as defendants ICSOP, TPI, and various TPI affiliates, officers and employees. Plaintiffs' petition included a variety of claims against the various defendants, but the only claims against ICSOP were based on the failure to inspect the premises, or in the alternative, negligent inspection.

Specifically, plaintiffs alleged that employees at TPI were exposed to hazardous chemicals while manufacturing wind blades at the TPI manufacturing facility. Plaintiffs alleged the acts or omissions of ICSOP caused them various injuries, including horrific skin ruptures, rashes, burns, swollen and wounded eyelids, irregular vaginal bleeding, extensive body itches, congestion in the throat and lungs, and erectile dysfunction. Plaintiffs sought compensatory damages for their personal injuries, medical expenses, and lost wages. Plaintiffs also sought punitive damages.

ICSOP moved to dismiss plaintiffs' claims against it. ICSOP noted that the only claims against it arose from alleged failure to inspect or negligent inspections. ICSOP asserted that it had statutory immunity from such claims under Iowa Code section 517.5.

Plaintiffs responded that section 517.5 is unconstitutional. They pointed to article I, sections 1, 6, and 9 of the Iowa Constitution.

The district court granted the motion to dismiss. We granted interlocutory review.

## II. Standard of Review.

We review motions to dismiss for failure to state a claim for corrections of errors at law. *Rees v. City of Shenandoah*, 682 N.W.2d 77, 78 (Iowa 2004). Constitutional claims are reviewed de novo. *Godfrey v. State*, 752 N.W.2d 413, 417 (Iowa 2008).

### III. Statutory and Constitutional Provisions.

Plaintiffs challenge the constitutionality of Iowa Code section 517.5. That provision states,

> No inspection of any place of employment made by insurance company inspectors or other inspectors inspecting for group self-insurance purposes shall be the basis for the imposition of civil liability upon the inspector or upon the insurance company employing the inspector . . . .

*Id.* Plaintiffs claim that Iowa Code section 517.5 violates the equal protection and privileges and immunities provisions of the Iowa Constitution, Iowa Const. art. I, § 6 ("All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."), the inalienable rights clause of the Iowa Constitution, *id.* art. I, § 1 ("All men and women are, by nature, free and equal, and have certain inalienable rights . . . ."), and the due process clause of the Iowa Constitution, *id.* art. I, § 9 ("The right of trial by jury shall remain inviolate . . . [and] no person shall be deprived of life, liberty, or property, without due process of law.").

### IV. Positions of the Parties.

### A. Plaintiffs.

1. *Equal protection.* With respect to equal protection, plaintiffs assert that similarly situated persons—nonemployee tortfeasors—are treated differently that other nonemployee tortfeasors under the workers' compensation statutes. Ordinarily, nonemployee tortfeasors are subject to common law liability. But, plaintiffs point out, ICSOP as a nonemployee tortfeasor receives absolute immunity under Iowa Code section 517.5. Further, plaintiffs assert the distinction between nonemployee tortfeasor insurance companies and other nonemployee tortfeasors impacts a

fundamental interest in access to the courts, and as a result, the classification is subject to strict scrutiny.

In support of their equal protection claim, plaintiffs cite *Suckow v. NEOWA FS, Inc.,* 445 N.W.2d 776 (Iowa 1989). In *Suckow,* the plaintiff challenged a classification scheme arising out of the workers' compensation statute. *Id.* at 777. He asserted that because a coemployee could be liable for workplace injuries based on gross negligence under Iowa Code section 85.20 (1985), the employer should also be subject to liability under a gross negligence theory. *Id.* The plaintiff attacked the distinction between employers and coemployees both under a strict scrutiny and a rational basis analysis. *Id.* at 778–79. The *Suckow* court determined that a fundamental right was not involved and that the statute had a rational basis. As a result, the *Suckow* court affirmed the district court's dismissal of the claim. *Id.* at 778–80.

Plaintiffs in this case recognize that the *Suckow* court concluded that the classification did not involve a fundamental right of access to the courts. Plaintiffs argue, however, that the *Suckow* court emphasized that the statutory immunity granted to employers did not eliminate an employee's ability to recover against the employer, but only required that any recovery be channeled through the workers' compensation process. *Id.* at 778–79. Plaintiffs thus emphasize that the immunity statute at issue in *Suckow* did not eliminate all potential claims against an employer arising out of workers' compensation, but only directed that claims be resolved through a statutorily required administrative process. *Id.*

Plaintiffs also cite the case of *Seivert v. Resnick,* 342 N.W.2d 484 (Iowa 1984). In *Seivert,* the court considered the statutory classification which provided coemployees with immunity except for acts or omissions that amounted to "gross negligence" while non-coemployee tortfeasors had

no similar immunity. *Id.* at 484 (citing Iowa Code § 85.20 (1981)). The plaintiff in *Seivert* sought to sue coemployees based on a simple negligence theory. *Id.* at 484–85. The district court found there was a rational basis for the classification. *Id.*

The *Seivert* court affirmed the district court's dismissal of the simple negligence claim. *Id.* at 485–86. According to the *Seivert* court, the provision of limited immunity to coemployees was rational because coemployees worked at the direction of the employer, and as a result, providing limited immunity to coemployees could be considered part of the quid pro quo for the workers' compensation scheme. *Id.* at 485.

Plaintiffs here point out that under *Seivert,* a potential claimant could still seek a remedy against coemployees based on gross negligence. *See id.* at 484. As a result, plaintiffs argue, access to the courts in *Seivert* was not completely denied. *See id.* Because the claim against a coemployee was not completely denied, plaintiffs contend that the *Seivert* court was able to apply a rational basis test and sustain the classification.

Plaintiffs assert that Iowa Code section 517.5 is distinguishable from the statutory provisions considered in *Suckow* and *Seivert* because section 517.5 completely eliminates any claim against ICSOP. Consequently, plaintiffs assert, the fundamental right of access to the courts is implicated in this case and strict scrutiny applies.

Applying a strict scrutiny test, plaintiffs assert that ICSOP cannot show the statute is narrowly tailored to advance a compelling interest. Although workplace safety is an important government objective, plaintiffs contend, it can be accomplished through the alternative and less burdensome means of occupational safety and health inspections pursuant to Iowa Code section 88.6.

Further, plaintiffs question whether a statute that grants immunity for acts or omissions related to workplace inspections promotes safety at all. In support of this contention, plaintiffs cite *Fireman's Fund American Insurance v. Coleman,* 394 So. 2d 334 (Ala. 1980). In *Fireman's Fund,* the Alabama Supreme Court held that a grant of statutory immunity to insurance carriers was unconstitutional. *Id.* at 336. The *Fireman's Fund* case relied on earlier Alabama precedent, which held that a provision in Alabama's workers' compensation statute granting immunity to coemployees violated article I, section 13 of the Alabama Constitution. *Id.* (citing *Grantham v. Denke,* 359 So. 2d 785, 787 (Ala. 1978)). Article I, section 13 of the Alabama Constitution provides that "every person, for any injury done him, . . . shall have a remedy by due process of law." Ala. Const. art. I, § 13.

Plaintiffs urge us to adhere to the reasoning of Justice Jones in a concurring opinion in *Fireman's Fund.* In his opinion, Justice Jones noted the difference between jurisdictions regarding the quid pro quo in a workers' compensation statute as involving solely the employer and the employee, and those jurisdictions where the quid pro quo involved the employee and a larger "collective interest or enterprise." *Id.* at 342 (Jones, J., concurring). Under the latter line of cases, according to Justice Jones, a remedy against some party is sufficient to avoid a constitutional problem. *Id.* Justice Jones rejected the collective interests or enterprise theory, arguing that workers' compensation statutes govern only the relationship between the employer and the employee. *Id.* at 342–43.

Justice Jones considered the insurance carrier's claim that there was another quid pro quo argument independent of workers' compensation benefits, namely, that immunity from liability for workplace inspections advances the state's interest in eradicating unsafe working

conditions. *See id.* at 345. But Justice Jones rejected this rationale. *Id.* at 345–46. Justice Jones found that immunity provisions were contrary to the premise of our tort system of accountability and amounted to a declaration that "[i]f you will not hold me responsible for my misconduct, I will be more careful." *Id.* at 346.

If the court is inclined not to apply strict scrutiny, plaintiffs here argue, the distinction between workers' compensation insurance companies and other nonemployee tortfeasors cannot survive a rational basis challenge. Plaintiffs claim that if encouraging inspections is the goal, the rational way to do so is not to immunize insurance company inspections but to require inspections under certain circumstances.

Plaintiffs finally launch a somewhat different claim. Plaintiffs note that occupational health and safety inspectors of the state operating under Iowa Code section 88.6 receive only qualified immunity under the State Tort Claims Act, Iowa Code section 669.14. According to plaintiffs, there is no rational basis to grant absolute immunity to a private insurance company conducting workplace inspections and only qualified immunity to state inspectors.

2. *Inalienable rights.* Plaintiffs next assert that Iowa Code section 517.5 violates the inalienable rights clause of article I, section 1 of the Iowa Constitution. Plaintiffs point out that under our caselaw, the inalienable rights clause was designed to "secure citizens' pre-existing common law rights (sometimes known as 'natural rights') from unwarranted government restrictions." *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 176 (Iowa 2004). Plaintiffs assert that because the immunity of the workers' compensation insurance carrier for liability arising from inspections is absolute, a fundamental right of access to the courts has been implicated.

Plaintiffs recognize that even where a right protected under article I, section 1 is involved, the legislature may reasonably regulate that right. *Steinberg-Baum & Co. v. Countryman*, 247 Iowa 923, 929–30, 77 N.W.2d 15, 18–19 (1956). Citing *Fireman's Fund*, 394 So. 2d at 344, plaintiffs assert that the absolute immunity provision of Iowa Code section 517.5 does not reasonably promote the public interest in safety.

3. *Due process.* Last, plaintiffs claim that Iowa Code section 517.5 violates the due process clause of the Iowa Constitution in article I, section 9 by depriving them of a right to a jury trial. Plaintiffs incorporate their earlier arguments suggesting that there is no rational relationship between the immunity statute and its intended purpose.

**B. Defendant's Position.**

1. *Equal protection.* At the outset, ICSOP urges that we apply a rational basis test in this case. ICSOP notes, under Iowa Administrative Code rule 876—4.10, "Whenever any insurance carrier shall issue a policy with a clause in substance providing that jurisdiction of the employer is jurisdiction of the insurance carrier, the insurance carrier shall be deemed a party in any action against the insured." Thus, ICSOP asserts, plaintiffs do have a claim against ICSOP, namely, a claim under the workers' compensation statute, but not a common law claim.

In any case, ICSOP argues there is no "vested right" in a common law claim against an insurer arising out of the failure to inspect or a negligent inspection. ICSOP notes that liability arising out of an insurance carrier's failure to inspect or negligent inspection was first recognized in Iowa in *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 1328, 121 N.W.2d 361, 366 (1963). In response to the *Fabricius* case, ICSOP points out, the legislature enacted Iowa Code section 88A.14 (1966), which eliminated insurance company liability to an employee related to

inspections. *See Thompson v. Bohlken*, 312 N.W.2d 501, 506–07 (Iowa 1981). Although the legislature omitted the statutory immunity for insurance company inspections against employee claims in the 1972 version of the Iowa Code, ICSOP explains, the legislature subsequently reenacted an immunity provision. 1978 Iowa Acts ch. 1168, § 1 (codified as amended at Iowa Code § 517.5 (2017)). Citing *Fabricius*, 254 Iowa at 1328, 121 N.W.2d at 366, ICSOP maintains that the right to abolish a common law cause of action is vested in the legislature under its police power.

ICSOP asserts additional reasons why any legislative classification at issue should be subject to rational basis review. ICSOP contends that while encouraging insurance company inspections was a purpose of the immunity, the immunity must be considered part of the larger workers' compensation system where the overall goal is to minimize appeals and afford an efficient and speedy tribunal to determine and award compensation under the terms of the workers' compensation act. *Suckow*, 445 N.W.2d at 778–79; *Flint v. City of Eldon*, 191 Iowa 845, 847, 183 N.W. 344, 345 (1921). Removing the immunity, ICSOP states, would cause insurance rates for employers to rise, something that the legislature could rationally seek to avoid.

Even if subject to strict scrutiny, ICSOP contends it satisfies that test. According to ICSOP, the workers' compensations scheme advances important interests that can only be accomplished by the immunities granted in Iowa Code section 517.5.

ICSOP confronts *Fireman's Fund*, the Alabama case on which plaintiffs extensively rely. ICSOP notes that *Fireman's Fund* was based on *Grantham*, 359 So. 2d 785, and *Grantham* was effectively overturned by the Alabama Supreme Court in *Reed v. Brunson*, 527 So. 2d 102, 117 (Ala.

1988).  The *Reed* court noted that the protections under article I, section 13 of the Alabama Constitution arose only when a litigant had "a vested interest in a particular cause of action."  *Id.* at 114.  In any event, ICSOP states, the *Reed* court noted that even if it were to apply the common law approach of *Fireman's Fund,* the legislature had the power to grant immunity to coemployees and therefore the statute was constitutional.  *Id.* at 114–16.  Although *Reed* involved a case on immunity for coemployees, ICSOP asserts that the reasoning of *Reed* extends to effectively overrule *Fireman's Fund.*

ICSOP disputes plaintiffs' claim that equal protection is violated when insurance companies engaged in workplace inspection receive absolute immunity but government workplace inspectors receive only qualified immunity.  ICSOP claims that the statute itself creates no classification, and therefore, no equal protection problem is present.  ICSOP further points out that if government inspectors were inspecting "for group self-insurance purposes," the inspectors would be entitled to absolute immunity under Iowa Code section 517.5.

Further, ICSOP distinguishes an employer's insurance carrier from the state's inspectors.  ICSOP notes that the employer's insurance carrier is already liable for "any and all personal injuries sustained by an employee arising out of and in the course of the employment."  Iowa Code § 85.3(1).  Thus, according to ICSOP, the carrier already has a motivation for improving workplace safety.  By contrast, ICSOP states, the state's inspectors operating under Iowa Code section 88.6 have no such workers' compensation liability.  Therefore, ICSOP concludes, there is a rational basis for not giving the state inspectors the immunity the employer's carrier is given.

2. *Inalienable rights.* ICSOP agrees that under article I, section 1, the court should consider (1) whether the right asserted is protected by the inalienable rights clause and (2) whether the statute is a reasonable exercise of the state's police power. *Gacke,* 684 N.W.2d at 176. ICSOP claims, however, that the question here does not involve access to the courts. Rather, according to ICSOP, the question is whether under Iowa law the plaintiff has a vested right at the time the legislature abolished any cause of action that might be asserted.

Further, ICSOP argues that plaintiffs are wrong when they suggest that Iowa Code section 517.5 does not serve the public interest. ICSOP claims that Iowa Code section 517.5 is part of the overall workers' compensation scheme. Its goal is to provide an expedient forum for injured workers to resolve claims against their employer and the employer's workers' compensation insurance provider. ICSOP thus sees the immunity provision in Iowa Code section 517.5 as part of the grand bargain of the workers' compensation system.

3. *Due process.* ICSOP points out that under their view of the case, plaintiffs have no claim against the insurance company for the allegedly negligent inspection. According to ICSOP, no right to a jury trial under article I, section 9 of the Iowa Constitution can possibly attach to a nonexistent claim.

**V. Discussion.**

**A. Introduction.** This case involves the intersection of two important currents in American law. These are the development of workers' compensation systems and the extension of tort liability to parties who engage in gratuitous or voluntary undertakings.

At the turn of the century, states began adopting workers' compensation systems to compensate workers for workplace injuries.

Emily A. Spieler, *(Re)assessing the Grand Bargain: Compensation for Work Injuries in the United States, 1900–2017*, 69 Rutgers L. Rev. 891, 893 (2017). These workers' compensation systems were said to be the product of a legislatively crafted "grand bargain" or "quid pro quo." *Id.* at 893 & n.4. Workers gave up their common law right to seek a full range of compensatory and punitive damages available at common law and instead became eligible for limited statutorily-based compensation. *Id.* at 908. In return, however, the employee was no longer required to show the employer's fault, but only needed to show that the injury arose in the course of employment. *See id.* at 908, 910 n.84. The precise contours of the grand bargain—what the employee gave up and what the employee gained—varied from jurisdiction to jurisdiction. *Id.* at 909. As a result, the workers' compensation caselaw that developed over time often turned upon the precise wording of the applicable statute. *See id.* at 908–10 & nn. 83, 86.

From the beginning, workers' compensation statutes were challenged on a variety of constitutional grounds. John Fabian Witt, *The Long History of State Constitutions and American Tort Law*, 36 Rutgers L.J. 1159, 1185 (2005). As a general proposition, courts sustained the substance of the grand bargain against a variety of constitutional attacks. *Id.* at 1190–91. Often the question in constitutional litigation is whether the challenged provision or classification is within the scope of the grand bargain or whether the challenge involves a provision or classification that is outside the scope of the legislatively created tradeoffs. *See, e.g., Seivert*, 342 N.W.2d at 485–86.

A second legal current involves the imposition of tort duties on a party that gratuitously or voluntarily engages in undertakings that are reasonably relied upon by third parties. *See* Restatement (Third) of Torts:

Liab. for Physical & Emotional Harm § 29, at 493 (Am. Law Inst. 2010). Once he undertakes to provide assistance, the law may require him to do so reasonably. *See id.* The classic example involves the bystander who voluntarily renders aid to another.

**B. Iowa Precedent Regarding Voluntary Undertakings and Scope of Grand Bargain.**

1. *Voluntary undertakings.* A significant issue coursing through American law in the middle of the twentieth century was the question of whether one who voluntarily or gratuitously engaged in an undertaking might be liable to third parties. We considered the question in the workers' compensation context in *Fabricius*, 254 Iowa at 1323, 121 N.W.2d at 363.

In *Fabricius*, the plaintiff's decedent died after the employer's workers' compensation insurance carrier allegedly negligently inspected or failed to inspect the workplace, machinery, and equipment of the employer. *Id.* at 1320–21, 121 N.W.2d at 362. The insurance company resisted liability, claiming it stood "in the shoes" of the employer and that it could not be considered a "third party" or "some person other than the employer" as those terms were used under a liability statute. *Id.* at 1321, 121 N.W.2d at 362.

The *Fabricius* court rejected the insurer's argument. *Id.* at 1328, 121 N.W.2d at 366. The *Fabricius* court cited *Bradshaw v. Iowa Methodist Hospital*, 251 Iowa 375, 388, 101 N.W.2d 167, 174 (1960), as authority for the proposition that a statute would not be interpreted as taking away a common law right unless imperatively required. 254 Iowa at 1322, 121 N.W.2d at 362. The *Fabricius* court viewed the insurer as outside the legislature's grand bargain. *Id.* at 1325–26, 121 N.W.2d at 364–65.

The *Fabricius* court noted that in *Smith v. American Employers' Insurance Co.,* 163 A.2d 564, 567–68 (N.H. 1960), the New Hampshire

Supreme Court came to a similar conclusion but that the decision prompted legislative action to amend its workers' compensation statute. 254 Iowa at 1327, 121 N.W.2d at 365. The *Fabricius* court was undeterred, noting that the New Hampshire legislature may not have considered the matter prior to the *Smith* case. *Id.* After the *Fabricius* case, the Iowa legislature enacted a statutory provision designed to overrule our holding. *See Bowen v. Kaplan,* 237 N.W.2d 799, 801 (Iowa 1976). The current legislative approach to inspections is now embraced in Iowa Code section 517.5.

2. *Scope of grand bargain.* The first recent Iowa case of importance considering the scope of the grand bargain in a constitutional context is *Seivert,* 342 N.W.2d 484. In *Seivert,* an injured worker challenged, on equal protection grounds under article I, section 6 of the Iowa Constitution, the provision of the Iowa workers' compensation statute that limited the potential liability of coemployees. *Id.*

We held in *Seivert* that the classification separating coemployee tortfeasors from tortfeasors who are not coemployees was rational in light of the legislative scheme for providing workers' compensation benefits. *Id.* at 485–86. We noted that a coemployee works at the direction of the employer, and as a result, it made sense to provide at least a partial share of the employer's immunity from common law tort suits. *Id.* at 485.

In short, *Seivert* stands for the proposition that the grand bargain in Iowa's workers' compensation program not only limits the liability of employers, but also limits the liability of coemployees compared to those who are not coemployees. Such classifications within the grand bargain are subject to rational basis review when attacked on equal protection grounds under the Iowa Constitution. *Id.*

The second relevant Iowa case is *Suckow*, 445 N.W.2d 776. In *Suckow*, the plaintiff claimed that employers and coemployees formed a class of tortfeasors and that the distinction between employers, who received complete immunity, and coemployee tortfeasors, who received limited immunity, violated equal protection under the Fourteenth Amendment and article I, section 6 of the Iowa Constitution. *Id.* at 777.

The *Suckow* court first considered whether the classification should be reviewed under strict scrutiny or the more deferential rational basis test. *Id.* at 778. The *Suckow* court declined to apply strict scrutiny. *Id.* at 778–79. The *Suckow* court rejected the notion that access to the court is a fundamental right deprived of workers' compensation claimants. *Id.* The *Suckow* court emphasized that workers' compensation schemes "represent a compromise between employees and employers." *Id.* at 779. The *Suckow* court concluded the classification in the case did not require strict scrutiny as it provided a comprehensive statutory scheme "to provide an expeditious and automatic remedy to injured employees." *Id.* at 778 (quoting Mark Douglas Cahill, Note, *Section 85.20 v. the Dual Capacity Doctrine: Should Worker's Compensation Always Be the Exclusive Remedy in Iowa?*, 32 Drake L. Rev. 1015, 1016 (1982) [hereinafter Cahill]).

Declining to apply strict scrutiny, the *Suckow* court turned to applying a rational basis test. *Id.* at 779. The *Suckow* court retraced the steps of *Seivert* and noted the employer's immunity is supported as the quid pro quo of giving up normal defenses while the employee gives up the right to common law verdicts. *Id.* The *Suckow* court concluded that there was a rational basis for giving employers more immunity than coemployees. *Id.* at 780. The *Suckow* court emphasized that employers have more at stake than coemployees as they must pay for all work-related

injury regardless of fault and must pay for the cost of insurance, burdens not borne by coemployees. *Id.*

**C.  Application of Principles to Present Dispute.**  We now turn to application of the principles in the above caselaw to the present dispute. We think it clear under *Seivert* and *Suckow* that the grand bargain embraced in our workers' compensation statute is not to be so narrowly construed as to include only provisions related to the employer and the employee.  *Suckow* stands for the proposition that the legislature may include a limitation on the liability of coemployees as part of the grand bargain of our workers' compensation scheme.

We think the logical extension of *Suckow* is that the legislature may reasonably provide immunity for inspections performed by a workers' compensation carrier as part of the grand bargain.  A workers' compensation carrier is bound by a judgment against the employer in a workers' compensation proceeding.  Iowa Code § 87.10.  Further, if an insurance carrier were exposed to risks as a result of negligent inspections, it might choose either to forgo inspections or to raise its insurance rates. The legislature could decide that the grand bargain behind the workers' compensation scheme is best balanced by including immunity for inspections performed by workers' compensation carriers.[2]

---

[2]A number of workers' compensation statutes in other jurisdictions expressly state that the term "employer" includes an employer's workers' compensation insurance company or include language that makes clear that workers' compensation insurance companies, to the extent they are subject to liability, are not liable for activities related to safety inspections.  *See, e.g.*, Ala. Code § 25-5-1(4) (Westlaw current through Act 2019-71) (stating that the term employer includes insurer); Ark. Code Ann. § 11-9-409(e)(1) (West, Westlaw current through 2019 Reg. Sess.) (stating that insurance company has no liability based on allegation that the accident was caused or could have been prevented by a program or inspection by the insurance company); Del. Code Ann. tit. 19, § 2301 (West, Westlaw current through 82 Laws 2019, ch. 7) (stating that the term employer includes insurer as far as practicable); 820 Ill. Comp. Stat. Ann. 305/5(a) (West, Westlaw current through P.A. 101-4, 2019 Reg. Sess.) (extending statutory immunity to insurer providing safety service, advice, or recommendations); Ind. Code Ann. § 22-3-2-5(a) (West, Westlaw current through 2019 1st Reg. Sess., Apr. 25, 2019) (stating that insurance

The consequence of including immunity for workers' compensation carriers' inspections in the grand bargain is that the proper standard of review under article I, section 6 of the Iowa Constitution is the rational basis test. *See Suckow*, 445 N.W.2d at 778–79; *Seivert*, 342 N.W.2d at 485. That test has been satisfied on reasonable policy grounds.

Because the immunity for workers' compensation insurance companies' inspections is part of the grand bargain behind workers' compensation schemes, plaintiffs' challenge to the provision under Iowa Constitution article I, section 1 also fails. The thrust of plaintiffs' claim is that the absolute immunity provision abolishes a claim otherwise available under common law. But if viewed as part of the workers' compensation scheme, that claim lacks merit. Here, the workers' compensation insurer has been hired by the employer to fulfill statutory duties under Iowa's workers' compensation law. As a result, the workers' compensation insurer is part of the workplace and is inextricably tied to the employer. Because of the close relationship between the workers' compensation carrier and the employer, the immunity provided by Iowa Code section 517.5 is part of the grand bargain reflected in Iowa's workers' compensation law. Under the workers' compensations scheme, there is no abolition of the right to recover. Instead, as emphasized in *Suckow*, the state has provided a comprehensive statutory scheme "to provide an expeditious and automatic remedy to injured employees." 445 N.W.2d at 778 (quoting Cahill, 32 Drake L. Rev. at 1016). As a result, contrary to plaintiffs' claim, there has been no absolute elimination of a right of recovery for on-the-job injuries, but only a reasonable regulation of it.

---

carrier is liable only to extent and manner specified by statute); Me. Rev. Stat. Ann. tit. 39-A, § 102(12) (Westlaw current through ch. 52, 2019 1st Reg. Sess.) (stating that the term employer includes insurer unless contrary intent is apparent or inconsistent with legislative purpose).

Because we have found that there is no claim for negligent inspection against a workers' compensation carrier, it follows that there is no right to a jury trial on a nonexistent claim. Thus, plaintiffs' due process claim also fails.

### VI. Conclusion.

For the above reasons, the judgment of the district court dismissing the action is affirmed.

**AFFIRMED.**